**Dusty Duane CURRY, Applicant,**

v.

**Hon. Sharen WILSON, Judge, Criminal District Court No. 1, Tarrant County, Respondent.**

No. 71393.

Court of Criminal Appeals of Texas, En Banc.

April 7, 1993.

Rehearing Denied May 19, 1993.

Jeff Kearney, Ward Casey, Fort Worth, for applicant.

Allan K. Butcher, Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

In an original application for writ of prohibition, applicant has requested that this Court order respondent, The Honorable Sharen Wilson, to refrain from activity that would allow the enforcement of Capias Pro Finum No. C–3328 and to cease all of her

efforts to collect $16,055.00 in legal fees. Tarrant County incurred the legal fees as a result of its provision of appointed counsel to applicant throughout his criminal trial. After reviewing the facts and law, and after determining the merits of the case presented, we will not issue the requested writ.

In order to place the matter in its proper perspective, we will first briefly review the facts leading up to the instant application. On February 5, 1990, applicant was charged with involuntary manslaughter in Tarrant County. His trial began on November 12, 1990 in Criminal District Court Number One, where respondent sits as a district judge. The trial ended on November 20, 1990. The jury returned a verdict of "not guilty."

After respondent dismissed the jury, she immediately notified applicant that she had become aware that he had the resources to pay for his legal representation. Additionally, she notified applicant that pursuant to Tex.Code Crim.Proc.Ann., Art. 26.05(e), he would be required to pay for his attorneys' fees. Article 26.05(e) provides:

"If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court *shall* order the defendant to pay the amount that it finds the defendant is able to pay." (emphasis added).

Respondent then ordered applicant and his attorneys to return to her court later to work out the repayment schedule details.

On December 10, 1990, applicant and his attorneys appeared, as ordered, for a hearing in respondent's court. At that hearing, respondent ordered applicant to repay the legal fees which the county incurred in his defense. Applicant was allowed to participate in the development of the repayment plan; in fact, the plan was modified, at applicant's suggestion, to fit his budget. The following exchange took place:

"THE COURT: I've had a chance to review your PSI and under the law you are not indigent and, therefore, I'm going to order that you pay back the court the attorneys' fees and investigative fees and other fees that were expended on behalf of your defense. You're going to want to do that, I think, because you had very good results. You got a couple of the best lawyers in town.

MR. CURRY: Yes, ma'am.

THE COURT: You're going to be ordered to pay $16,055 into the registry of the court. Those payments will be made on a monthly basis and according to you income, I'm going to order them in an amount of $300 a month. Is there any problem with that?

MR. CURRY: Yeah.

MR. KEARNEY: Just tell her you can do the best you can.

MR. CURRY: That's all I can do.

THE COURT: What amount can you pay, because it's contempt of court for you not to pay them, and that means you go to jail?

MR. CURRY: We're in the off-season where I work. We don't work this time of year.

THE COURT: What months do you work?

MR. CURRY: February through August.

THE COURT: Okay. So, how much can you pay in the off-season?

MR. CURRY: $300 a month, right now there's no way.

THE COURT: What can you pay in the off-season?

MR. CURRY: I have—I don't have any idea.

THE COURT: Are you not working at all the rest of the year?

MR. CURRY: We take off.

THE COURT: You don't work at all?

MR. CURRY: We don't make any—

THE COURT: You just have this one job and that's only six months a year, and the rest of the year you don't work at all on any job?

MR. CURRY: I work for my brother and I still work on cars and everything.

THE COURT: How much do you make when you do that?

MR. CURRY: $300.

THE COURT: A month?

MR. CURRY: A week.

THE COURT: In the off-season; that is, the months other than February through August, he's ordered to pay $100 a month. February through August, he's ordered to pay $300 a month until this is paid in full. Do you understand that?

MR. CURRY: Yes.

THE COURT: Failure of your—I will put you in jail for failure to pay. Do you understand that?

MR. CURRY: Yes."

Applicant did not object to the proceeding or to the order of the court.

Following the hearing, respondent issued a "Certification of Proceedings." The certification documented applicant's duty to follow the order of the court. Applicant completely and utterly failed in his duty to make a single payment to the court. As a result, on September 20, 1991, respondent issued a "capias pro finum." Applicant was never arrested and his liberty was not otherwise restricted.

On February 20, 1992, applicant, through his attorneys, filed a "Motion to Recall, Vacate, and Set Aside Capias Pro Finum for Want of Jurisdiction." The same day, a hearing was held before respondent. At the hearing, the Tarrant County District Attorney's Office indicated that it did not wish to participate. Consequently, respondent announced that she would appoint a special prosecuting attorney to represent the state and that the hearing would reconvene on March 5, 1992. Additionally, respondent recalled the court's warrant for the arrest of applicant.

On Feb. 26, 1992, applicant filed this original application for writ of prohibition. Applicant requested that this Court issue an order to prohibit respondent from enforcing its capias pro finum and from taking further action to collect the legal fees.

The first question which we must address is whether this Court has jurisdiction to hear and determine this matter. Respondent argues that we do not have jurisdiction; that this is not a criminal law matter.

■ This Court has the power to issue writs of prohibition in criminal law matters. TEX. CONST., Art. V, § 5. Disputes which arise over the enforcement of statutes governed by the Texas Code of Criminal Procedure, and which arise as a result of or incident to a criminal prosecution, are criminal law matters. As Judge Campbell said previously in *Smith v. Flack:*

> "Undoubtedly, the enforcement of an order issued pursuant to a criminal statute is a criminal law matter as much as the issuance of the order itself, even if it requires this Court to examine civil laws in the process. Were it otherwise, this Court's power to decide criminal law matters would be seriously eroded or eliminated all together by the incidental presence of civil law matters."

*Smith v. Flack,* 728 S.W.2d 784, at 788–789 (Tex.Crim.App.1987) (Involving, similarly, a dispute over Tex.Code.Crim.Proc.Ann., Art. 26.05).

■ The instant case arose out of a dispute over a district judge's authority to enforce an order which was mandated by Tex.Code Crim.Proc.Ann., Art. 26.05(e). Additionally, the order was issued by a district judge in an effort to recoup the cost of legal services provided to a defendant in a criminal trial. Therefore, this dispute is a criminal law matter and this Court has jurisdiction to hear the case and determine whether a writ of prohibition should issue.[1]

■ We will now address the merits of applicant's claim. In order to show that he is entitled to extraordinary relief, applicant must demonstrate to this Court that: (1) he has no other adequate remedy at law; and that (2) he is clearly entitled to the relief sought. *Buntion v. Harmon,* 827 S.W.2d

---

1. For a better understanding of this Court's jurisdiction in such matters, *see also Commissioners' Court v. Beall,* 98 Tex. 104, 81 S.W. 526 (1904); *Weiner v. Dial,* 653 S.W.2d 786 (Tex. Crim.App.1983); *and see Dickens v. Court of Appeals,* 727 S.W.2d 542 (Tex.Crim.App.1987) and *Lanford v. The Fourteenth Court of Appeals,* 847 S.W.2d 581 (Tex.Cr.App.1993).

945, at 947 (Tex.Crim.App.1992) (see footnote 2); *Sutton v. Bage*, 822 S.W.2d 55, at 57 (Tex.Crim.App.1992); and *Stearnes v. Clinton*, 780 S.W.2d 216 (Tex.Crim.App. 1989).

■ After careful consideration, it seems abundantly clear to us that, indeed, applicant has no other adequate remedy at law at this time. However, we believe that he is not clearly entitled to the relief he seeks.

Applicant prays that this Court order respondent to refrain from arrest, detention or seizure of applicant or his property and to refrain from any action to coerce payment of the fees which respondent has ordered him to pay. At the hearing on applicant's "Motion to Re-call, Vacate and Set Aside Capias Pro Finum" which was held on February 20, 1992, respondent withdrew the court's warrant. She stated: "The court's warrant is re-called." We can only construe the court's statement as a withdrawal of the "Capias Pro Finum." Thus, we need not address the question of whether it is within respondent's authority to seize applicant or his property for failure to pay as ordered. To do so would be merely advisory since applicant is no longer under imminent threat of confinement. Additionally, if respondent were to seize applicant or his property, applicant would have an adequate remedy by way of habeas corpus.

Nevertheless, there still exists the matter of the court's authority to seek reimbursement of the legal fees expended on applicant's behalf. Applicant advances the claim that any attempt by the court to seek reimbursement for his legal expenses pursuant to Tex.Code Crim.Proc.Ann., Art 26.-05(e) is void. In support he argues that respondent had no jurisdiction to order him to re-pay the legal fees because at the moment respondent entered a judgement of acquittal in his case, the court's jurisdiction was terminated.

■ It is true, as applicant notes, that in *Garcia v. Dial*, 596 S.W.2d 524 (Tex.Crim. App.1980), we reiterated the well settled principle that:

> "when a trial court empowered with jurisdiction over a criminal case sustains a motion to dismiss the indictment or information, the person accused thereunder is, in law, discharged from the accusation against him; there is concomitant to such dismissal, no case pending against the accused and, accordingly, no jurisdiction remaining in the dismissing court."

*Garcia v. Dial*, 596 S.W.2d, at 528

That statement of law from *Garcia* is certainly the general rule. However in *Garcia* we also stated that:

> "attachment of jurisdiction ... conveys upon that court the power to determine all essential questions '*and to do any and all things with reference thereto authorized by the Constitution and statutes ...*'" (emphasis added).

*Id.*, at 527–528. And, in *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, (Tex. 1926), the Texas Supreme Court stated that:

> "[T]he ... court, having ... acquired jurisdiction, may exercise it *to dispose of the whole subject-matter of the litigation and adjust all the equities between the parties*, and it is entitled to do so." (emphasis added).

*Cleveland v. Ward*, 285 S.W., at 1070.

It follows that although a court may have ultimately decided the merits of a party's claim, it does not lose it's general jurisdiction to act until all of the issues which arise as a result of the initial action have been resolved.[2]

---

2. *See e.g. Sutherland v. De Leon*, 1 Tex. 250 (1846); *and see Willy v. Coastal Corporation*, —— U.S. ——, ——, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992) (Considering whether a federal district court could impose sanctions when it did not have subject matter jurisdiction, Chief Justice Rehnquist noted in his majority opinion that: "[I]t is well established that a federal court may consider collateral issues after an action is no longer pending...." *quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990). *And see, United States v. Durka*, 490 F.2d 478 (7th Cir. 1973) (Finding that a trial court had jurisdiction to order a defendant to pay back funds expended on appointed counsel even though the defendant had been acquitted three months earlier.).

The Texas courts derive their authority to act from the Constitution and laws of the State of Texas. *Austin & N.W.R. Co. v. Cluck*, 97 Tex. 172, 77 S.W. 403 (1903); *See also Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641 (1933), *and see Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979). We must be ever aware of the legislature's authority to impose collateral duties upon the courts which might extend their jurisdiction in certain cases. Tex. Const., Art. V § 1. A court must perform those collateral judicial duties that the legislature orders it to perform as long as they are constitutionally permissible.

This legislative mandate has created an additional duty which the courts must carry out whenever appointed counsel is provided to a defendant who has the financial resources to offset the county's legal fees. Respondent did not have discretion with regard to this measure. Further, the legislature did not provide that the court must perform this act before a judgment on the merits is entered. It only mandated that the courts issue the orders.[3]

Here, after discovering that a defendant, who had been provided appointed legal counsel at the expense of the county, actually had sufficient financial resources to offset the costs of his defense, respondent ordered him to repay the county pursuant to Tex.Code Crim.Proc.Ann., Art. 26.-05(e). It is true that, when it ordered applicant to repay the county, the trial court no longer had authority to determine the issues presented in the indictment against applicant because the jury had already returned a verdict of not guilty. However,

Section (e) of Art. 26.05 provided it with continuing authority to order repayment of the county funds expended for applicant's appointed legal defense by virtue of its determination that applicant was financially able to offset those costs.

Additionally, applicant makes claims that the Texas recoupment statute violates the Due Process and Equal Protection provisions of the State and Federal Constitutions. Although these claims present us with issues of first impression in this state, similar issues have been addressed by some of our sister states and by the United States Supreme Court. We will attempt to take guidance from them.

We will first address applicant's Due Process claim. Applicant argues that any attempt to force him to pay money is an attempt to punish him "notwithstanding exoneration by the jury's verdict of not guilty." He contends that consequently any attempt to enforce the provisions of the statute against him will violate principles of Due Process. We disagree.

In *People v. Kelleher*, 116 Ill.App.3d 186, 72 Ill.Dec. 211, 452 N.E.2d 143 (4th Dist. 1983) cert. denied sub nom *Kelleher v. Illinois*, 466 U.S. 907, 104 S.Ct. 1686, 80 L.Ed.2d 160 (1984),[4] the Appellate Court of Illinois, Fourth District, addressed a very similar claim. Where an accused, who had received the benefit of appointed legal counsel, was acquitted of two counts of forgery, the court observed that:

> "[A] nonindigent, although acquitted, is ordinarily required without reimburse-

---

**3.** The dissent argues that we are employing Art. 26.05(e) to "extend or expand the jurisdiction of the trial court." Dissenting Opinion, at p. 48. We are not ruling that the statute serves to artificially extend a trial court's jurisdiction. Our decision holds that a trial court has not lost jurisdiction over a criminal law matter until all of the issues, herein the repayment of county funds employed to secure counsel for appellant, attendant to that criminal law matter are resolved.

The dissent also argues that our decision contravenes the intent of TEX.CODE CRIM.PROC. ANN. art. 37.12, which provides in the event of an acquittal, a "defendant shall be at once discharged from all further liability upon the

charge for which he was tried; …". We disagree, and shall focus "our attention on the literal text of the statute in question and attempting to discern the fair, objective meaning of that text at the time of enactment." *Boykin v. State*, 818 S.W.2d 782, at 785 (Tex.Cr.App.1991). We believe that Art. 37.12 serves only to discharge a defendant from any further criminal liability for the offense for which he was tried. A literal reading of the text of Art. 37.12 does not indicate a defendant is also to be discharged from any civil liability for repayment of attorney's fees upon the event of an acquittal.

**4.** See, also, ILL.REV.STAT. Par. 113–3.1 (1981, Ch. 38).

ment by the state, to pay for counsel. To require an indigent, although acquitted, to reimburse the county, to the extent he is able, for the expense of furnished counsel, tends to put indigents and nonindigents who are acquitted on the same basis and is consistent with due process."

The United States Court of Appeals for the Seventh Circuit reached a similar decision in a case where the defendant was acquitted. In *United States v. Durka*, 490 F.2d 478 (1973), the Court held that a federal district court had jurisdiction "to enter an order affecting the defendant's property rights despite the passage of three months from the rendition of judgment and defendant's discharge." There, the court decided that the rule announced in "18 U.S.C.A. § 3006 A vests in the district court broad authority to issue such an order." Further, that court observed that three months was not an "unreasonable" length of time.

Additionally, when the defendant in *Durka* argued that the court's failure to grant him a hearing on the issue before issuing the order to pay violated principles of due process, the court concluded that "[T]he fixing of compensation and reimbursement pursuant to 18 U.S.C.A. § 3006 A ... is a matter within the exclusive discretion of the district court and is not such an event that requires the procedural safeguards of an adversary hearing." The court also found that "if the defendant refused to comply with the district court's order and contempt proceedings are recommended ... the defendant will be entitled to a hearing ... at which time he may assert his

defenses to payment." The decision reached in *Durka* has been followed and has not been disturbed.[5]

■ The State of Texas has a significant interest in assuring that persons with the financial resources to pay for their own representation do not take a free ride at the expense of its taxpayers. It is apparent from a plain reading of the Texas statute that the legislature intended to protect its taxpayers from persons who would abuse the right to free legal services. TEX.CODE CRIM.PROC.ANN., Art. 26.-05(e). In providing legal services to those indigent citizens who cannot afford to pay for their own defense, this State provides an important service. Nevertheless, it is not an inherent violation of due process for the State to take reasonable steps to collect on expenditures made on behalf of those who have the ability to off-set the State's expenses.

Applicant has received notice of all actions taken by the trial court with regard to this matter. Additionally, the trial court has afforded applicant every opportunity to be heard and to voice objections. Consequently, we find that neither Article 26.-05(e) nor its application in the instant case violate principles of Due Process in the manner argued by applicant.

We next address applicant's Equal Protection claim. He argues that, since the "capias pro finum" issued by the trial court orders the Sheriff to "take the body of him, the said: Dusty Duane Curry and deliver him, to the jailor of the said County," he has been singled out for discriminatory

---

**5.** See, also, *United States v. Martin Trigona*, 684 F.2d 485, 492 (7th Cir.1982); *United States v. Gurtunca*, 836 F.2d 283, 289 (7th Cir.1987); *United States v. Angulo*, 864 F.2d 504, 509 (7th Cir.1988); and *United States v. Ross*, 917 F.2d 997, 998 (7th Cir.1990). These four cases, are factually distinguishable from the instant case because, in them, the defendants were convicted and not acquitted.

The California Supreme Court reached a similar decision in a case where the defendant also was convicted. In *People v. Amor*, 12 Cal.3d 20, 114 Cal.Rptr. 765, at 770, 523 P.2d 1173, at 1178 (1974), it was held:

"*Does the fact that acquitted defendants may be required to reimburse the county under*

*section 987.8 of the Penal Code for counsel fees result in a denial of due process?*

*"No. To begin with, defendant was not acquitted, and her right to raise this issue is questionable. In any event, no punishment of acquitted defendants is authorized by section 987.8. Requiring that a defendant, to the extent that he has the financial ability to do so, reimburse the county for services received does not constitute punishment by any definition ordinarily ascribed to such term. Furthermore, as hereinabove indicated, under the statute the burden of reimbursement is placed upon all indigent defendants according to their ability to pay, and there is no singling out of acquitted defendants.*"

treatment much like the defendant in *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). In *James v. Strange*, the U.S. Supreme Court held a Kansas recoupment statute to be invalid as a violation of Equal Protection because it did not allow indigent defendants all of the exemptions provided to other judgement debtors. Specifically, the Court stated:

> "We recognize, of course, that a State's claim to reimbursement may take precedence, over the claims of private creditors and that enforcement procedures with respect to judgements need not be identical. This does not mean, however, that a state may impose unduly harsh or discriminatory terms merely because the obligation is to public treasury rather than to a private creditor." [6]

*James v. Strange*, 407 U.S., at 138, 92 S.Ct., at 2033.

Nevertheless, in the instant case, the trial court withdrew its warrant for the arrest of applicant at the hearing it held on February 20, 1992. As a result, applicant is no longer under imminent threat of incarceration for his violation of the court's order. We therefore see no need to address the propriety of the trial court's issuance of the capias pro finum.

Additionally, the statute addressed in *James v. Strange, Id.,* is distinguishable from the Texas statute in question. The statute addressed in *James v. Strange* actually spelled out a denial of exemptions to persons who fell under its terms, while, the Texas statute contains no such denial of exemptions and does not provide for persons who fall under its terms to be treated any differently than other judgement debtors.

6. See, also, KAN.STAT.ANN. § 2d–4531 (Supp. 1971).

7. See, also, OREGON REV.STAT. § 161.665(2).

8. *Fuller v. Oregon*, 417 U.S., at 47, 94 S.Ct., at 2121 referring to *James v. Strange*, (supra).

9. Although applicant requested a writ of prohibition in the instant case, to prevent the trial court from any action that would enforce the Capias Pro Finum, it appears that the more

A similar distinction was raised in *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974).[7] There, the U.S. Supreme Court upheld the validity of an Oregon recoupment statute. The Court explained that the Oregon statute did not contain the same problems as the Kansas statute addressed in *James v. Strange*[8]. Consequently, we find that Article 26.05(e) of the Texas Code of Criminal Procedure does not violate principals of Equal Protection in the manner alleged by applicant.

■ We hold that respondent had specific legislative authority to issue the order requiring applicant to pay for the services he received. Additionally, applicant is not entitled to have this Court interfere with a legitimate exercise of authority by the district court. Provided that the requirements of due process are met, the court may enforce its own order. We will not issue the requested writ of prohibition.[9]

CLINTON, Judge, dissenting.

In *Garcia v. Dial*, 596 S.W.2d 524 (Tex. Cr.App.1980), this Court granted mandamus relief in a case in which a trial court purported to act although it lacked jurisdiction to do so. Dial, the trial judge, had granted defendant Garcia's motion to dismiss an indictment against him on the basis of a violation of the now-defunct Speedy Trial Act. Later persuaded by the State that this ruling was a mistake, Judge Dial ordered the cause reinstated on the court's docket and set for trial. Garcia petitioned for mandamus and prohibition relief, asking this Court to order Judge Dial to set aside the order setting aside the dismissal, and to prohibit the trial. We observed:

> "It is well settled that when a trial court empowered with jurisdiction over a criminal case sustains a motion to dis-

appropriate remedy would have been for him to request mandamus to compel the trial court to withdraw that order. See, and compare, *State ex rel. Hawthorn v. Giblin*, 589 S.W.2d 431, at 432–433 (Tex.Cr.App.1979) (wherein, the prosecutor sought a writ of prohibition to prevent the trial court from entering a judgment of acquittal that it was considering, but had not yet entered.). Based on the reasoning above, this Court would also have denied an application for a writ of mandamus in this cause.

miss the indictment or information, the person accused thereunder is, in law, discharged from the accusation against him; there is, concomitant to such dismissal, no case pending against the accused and, accordingly, no jurisdiction remaining in the dismissing court. See, e.g., *Flores v. State*, 487 S.W.2d 122 (Tex.Cr.App.1972); *Pugh v. State*, 163 Tex.Cr.R. 258, 289 S.W.2d 929 (1956); *Ringer v. State*, 137 Tex.Cr.R. 242, 129 S.W.2d 654 (1938); *Turner v. State*, 21 Tex.App. 198, 18 S.W. 96 (1886); *Venters v. State*, 18 Tex. App. 198 (1885). Compare Article 44.31, V.A.C.C.P."

We held that the only authority remaining in the trial court following dismissal of the indictment was to set aside the order setting aside the dismissal. Finding this to be a ministerial act, and that Garcia had no adequate remedy at law, we granted mandamus relief. See also *State ex rel. Holmes v. Denson*, 671 S.W.2d 896, at 900 (Tex.Cr.App.1984) (once it entered dismissal of indictment, trial court without authority to order State not to refile).

In the instant application for writ of prohibition, applicant Curry contends similarly that, having entered a judgment of acquittal in Curry's favor, the trial judge of the Criminal District Court No. 1 of Tarrant County was without jurisdiction to order him to repay attorney's fees. The judgment of acquittal was entered on November 20, 1990. Three weeks later, on December 10, 1990, the trial court ordered the graduated reimbursement of attorney's fees totalling $16,055. The question presented is whether the jurisdiction of the trial court extended beyond entry of the judgment of acquittal so as to authorize this order. The trial judge believed she had jurisdiction by virtue or Article 26.-05(e), V.A.C.C.P., and a majority of this Court today agrees. But the opinion of the majority does not explain how Article 26.-05(e) may be read to confer this jurisdiction so much as it simply announces that it

does. See Op. at 45. Thus, the majority largely begs the question.

Once a verdict of acquittal is returned, "the defendant shall be at once discharged from all further liability upon the charge for which he was tried[.]" Article 37.12, V.A.C.C.P.; see also Article 42.01, § 1(11), V.A.C.C.P. With a judgment of acquittal, no less than when an indictment is dismissed, the jurisdiction of the trial court is exhausted. Appointed representation ends. Article 26.04(a), V.A.C.C.P. Nevertheless, because Article 26.05(e) says the trial court "shall" order the defendant to pay whatever amount he is able to, the majority holds that the trial court's jurisdiction continues. In my view, the majority misconceives our statutory scheme.

Article 26.05(e) reads:

"(e) If the court determines that a defendant has financial resources that enable him to offset in part or whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay the amount that it finds the defendant is able to pay."

That the statute uses the mandatory "shall" simply means the trial court, during the pendency of its jurisdiction, has no discretion but to order the offset in the event it finds the defendant has the ability to pay. This absence of discretion does not speak to the question of *when* the determination is to be made whether the defendant can offset in whole or part the costs of his representation. The statute provides no procedural mechanism for a post-judgment determination of a defendant's ability to pay. That in itself is persuasive enough that it was not meant to stretch the jurisdiction of the trial court beyond the point at which it would ordinarily extinguish. In short, Article 26.05(e) does not operate on its face to extend or expand the jurisdiction of the trial court over the subject matter of the cause and over the person of the accused, as the majority would have it.[1]

---

1. The majority would read selective portions of *Garcia v. Dial*, supra, and *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, at 1070 (1926), to mean that in a criminal case the trial court

"does not lose it's [sic] *general jurisdiction* to act until all of the issues which arise as a result of the initial action have been resolved." Op. at 44 (emphasis supplied).

Nor does Article 26.05(e) otherwise read like a "recoupment" statute, at least not in the ordinary sense of that word. By its terms the trial court is to determine whether the defendant has the resources to "offset in part or in whole" the expense of legal services. Surely a true "recoupment" statute would not limit the defendant's liability to only a part of that expense, but would simply extend the time over which the entire expense was to be repaid. That the provision requires the defendant to "offset" the expense indicates, moreover, that the attorney's fees have not yet been paid, so there is nothing yet for the county to "recoup." This impression is fortified by the fact that the trial court orders the defendant to "pay" that part or whole of attorney's fees that he can afford; not to "repay" the county for them. It seems unmistakable to me that Article 26.05(e) was meant to authorize the trial court, during the pendency of its jurisdiction, to order the defendant himself to pay whatever portion of his attorney's fees he can afford during that time. It does not authorize the trial court to reach beyond its jurisdiction to force a defendant to repay expenses of representation already incurred on his behalf by the county.

This is not to say that Articles 26.04 and 26.05 do not contemplate reimbursement by the defendant of attorney's fees under certain circumstances. Article 26.04 requires the trial court to appoint counsel to represent an indigent accused—that is, if the accused has not waived his right to counsel under Article 1.051, V.A.C.C.P. The trial court makes a preliminary determination whether the accused is "financially able to employ counsel," *id.*, § (b), considering such factors as income, property, debt and family obligations of the accused, and whether he has been able to post bail. Article 26.04, supra, § (b). The accused must either answer a sworn questionnaire or testify, or both, attesting to his indigency, and must sign a sworn statement to the effect that he cannot afford to employ counsel. *Id.*, §§ (c) & (d). Under § (e) of Article 26.04, "[i]f there is a material change in circumstances" after the initial determination whether the accused is indigent, the losing party may move for a reassessment of the accused's status as indigent/non-indigent. Appointed counsel is to be reimbursed for services rendered

---

As to "general jurisdiction to act," hornbook law says, "All Texas courts are courts of limited jurisdiction in the sense that each court has only such power as the constitution and laws enacted thereunder give such court." 16 Tex.Jur.3d *Courts* § 46; *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, at 644–645 (1933). "General jurisdiction" is an abstract delegation. In civil cases the requisite to actual exercise of such judicial power is jurisdiction over the subject matter of the cause or the parties to the action; that is to say, jurisdiction must "attach" to one or the other. 16 Tex.Jur.3d *Courts* § 47; *Morrow v. Corbin,* supra, 62 S.W.2d at 645. A criminal action requires both. *Garcia v. Dial,* supra, at 527.

*Garcia v. Dial* and *Cleveland v. Ward,* both supra, stand for the fundamental proposition that the trial court which first obtains *subject matter* and *personal jurisdiction* retains power and authority—to the exclusion of every other court—to resolve all essential issues in the cause and to dispose of them accordingly *in its judgment,* thereby exhausting its jurisdiction. *Garcia v. Dial,* supra, at 527–528; *Cleveland v. Ward,* supra, 285 S.W. at 1070–1071 (in suit in equity to cancel certain notes and deed of trust securing them and remove existing cloud on title, trial court has jurisdiction "to dispose of the whole subject-matter and adjust all the equi-

ties between the parties;") *accord: Pioneer Savings & Loan v. Peck,* 20 Tex.Civ.App. 111, 49 S.W 160, at 169 (1898), writ refused (trial court authorized "to fully and finally adjudicate all the matters at issue between the parties incident to [equitable action to cancel mortgage]"). As these cases demonstrate, the judicial resolution and adjudication are made and concluded in the judgment rendered and memorialized in the judgment entered.

Here the only judgment rendered and entered was an acquittal upon the verdict of "not guilty," and under the governing statute as a matter of law Curry was "at once discharged from all further liability." See *ante,* at 42.

Furthermore, "jurisdiction" also means the trial court "must not only have jurisdiction over the person and the matter but authority to render the particular judgment." *Ex parte Duncan,* 42 Tex.Cr.R 672, 62 S.W. 761, at 761 (1901); *Ex parte Armstrong,* 110 Tex.Cr.R. 362, 8 S.W.2d 674, at 676 (1928) (unless power or authority to perform contemplated act is properly provided, court is "without jurisdiction and its acts without validity"). Once the court adjudged an acquittal of Curry, the statute operating to discharge him, the court lost jurisdiction over his person, and thus power to render any further judgment or order in the premises.

according to a fee schedule set up in every county by the criminal court judges therein. Article 26.05, supra, §§ (a) & (b). And if the defendant is determined to be financially able, either before trial or anytime during trial pursuant to Article 26.04, he may be ordered to offset whatever portion of the expense of his representation he can afford, before that expense is incurred by the county. Article 26.05(e), supra.

Whatever portion the defendant has not already offset, the State may be able to recover after the fact. Article 26.05, § (d), provides:

"(d) All payments made under this article shall be paid from the general fund of the county in which the prosecution was instituted or habeas corpus hearing held *and may be included as costs of court.*"

(Emphasis added.) Presumably this cost of court is taxable to the defendant in the judgment of conviction.[2] Thus the Legislature has provided a mechanism for recovering the expense of indigent representation. The defendant, once convicted, will have a judgment against him for court costs, and the judgment may be executed "as in civil actions." Article 43.07, V.A.C.C.P. I am aware of no provision, however, that authorizes the assessment of costs to a defendant who has been acquitted at his trial.

2. The provisions in the Code of Criminal Procedure governing assessment and collection of costs against the accused are less than user-friendly. Article 1018 of the 1965 Code, a carry-over from previous codes, provided:

"When the defendant is convicted, the costs and fees paid by the State under this title shall be a charge against him, except when sentenced to death or to imprisonment for life, and when collected shall be paid into the State Treasury."

In 1985, Chapters 53 and One Hundred Three of the 1965 Code were recodified in what is now "Title 2" of the Code of Criminal Procedure. See Acts 1985, 69th Leg., ch. 269, p. 1300, § 1, eff. Sept. 1, 1985. Although no substantive change was intended, *id.,* § 6, at p. 1307, Article 1018 was simply repealed. Nevertheless, Title 2 contains a number of costs to be assessed against defendants convicted of felony and/or misdemeanor offenses. E.g., Article 102.004, V.A.C.C.P. (Jury Fee); Article 102.005, V.A.C.C.P. (Fees to Clerks); Article 102.013, V.A.C.C.P. (Court costs; crime stoppers assistance account); Article 102.051, V.A.C.C.P. (Misdemeanor and Felony Costs).

Article 42.15(a), V.A.C.C.P., reads:

"(a) When the defendant is fined, the judgment shall be that the defendant pay the amount of the fine and *all costs* to the state."

Article 42.16, V.A.C.C.P., reads:

"If the punishment is any other than a fine, the judgment shall specify it, and order it enforced by the proper process. It shall also adjudge *all costs* against the defendant, and order the collection thereof as in other cases."

(Emphases supplied.) Before the 1965 Code of Criminal Procedure, these provisions applied only to misdemeanor judgments, at least if we are to trust a caption appearing in Vernon's Annotated C.C.P. (1950). That caption was omitted, however, from the 1965 Code. Thus, unless we are to read Article 42.15(a) to apply when the defendant is fined *only,* a punishment ordinarily authorized only in misdemeanor cases, see V.T.C.A. Penal Code, Chapter 12, these provisions do not presently have such limited application.

Prior to 1965, what are now Articles 43.01 through 43.13, V.A.C.C.P., provided for execution of judgments in misdemeanors only—again, according to a caption in Vernon's. That caption was also omitted from the 1965 Code. Thus, presumably Article 43.07, V.A.C.C.P., governing "Execution for Fine and Costs," now applies to felonies and misdemeanors alike. That statute reads:

"In each case of pecuniary fine, an execution may issue for the fine and costs, though a capias was issued for the defendant; and a capias may issue for the defendant though an execution was issued against his property. The execution shall be collected and returned as in civil actions. When the execution has been collected, the defendant shall be at once discharged; and whenever the fine and costs have been legally discharged in any way, the execution shall be returned satisfied."

From all these provisions I gather that, because the money expended from the general funds of the county to pay an indigent's attorney's fees "may be included as costs of court[,]" Article 26.05(d), supra, and because in a judgment of conviction "all costs" may be assessed against the accused, Articles 42.15 & 42.16, supra, and execution had thereon, Article 43.07, supra, attorney's fees may be assessed to the convicted defendant as costs of court. Execution of the judgment may be had "as in civil cases." *Id.* Of course, an indigent convict may not be imprisoned for failure to pay a fine or court costs, for that would violate the federal Equal Protection Clause, *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and, in cases of felony, our own state constitutional prohibition against cruel or unusual punishment, since there is no statutory provision for a felon to earn credit toward discharging court costs by incarceration. See *Ex parte Smith,* 110 Tex.Cr.R. 335, 8 S.W.2d 139 (1928) and *Ex parte Byrd,* 112 Tex.Cr.R. 19, 13 S.W.2d 855 (1929).

In any event, assuming *arguendo* that costs may be adjudged against a defendant even though he has been acquitted,[3] no such costs were levied against applicant in the judgment of acquittal in this cause. With the entry of the judgment of acquittal, the charging instrument was finally disposed of as surely as by a motion to dismiss. Article 37.12, supra; *Garcia v. Dial,* supra. At that point in time no costs had been adjudged against applicant, so there was no judgment of costs against him "to carry ... into execution." *Id.,* at 528, quoting *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, at 644 (1933). Absent at the very least some further pleading by which the trial court may reacquire jurisdiction, the trial court had no authority thereafter to order applicant to repay attorney's fees.

This Court is not limited by the denomination of petitioner's pleadings, but will look to the essence of the pleadings, including the prayers, as well as the record before us. *Id.,* at 529; *State ex rel. Wade v. Mays,* 689 S.W.2d 893, at 897 (Tex.Cr.App. 1985). Although he applies nominally for a writ of prohibition, and prays that we order respondent to refrain from "the issuance of any further Capias or other instrument of coercion" to enforce her order of December 10, 1990, that applicant repay attorney's fees, it is obvious that the more appropriate remedy is to issue the writ of mandamus, as in *Garcia,* directing respondent to set aside that order. Because the majority does not, I respectfully dissent.

MILLER and MALONEY, JJ., join.

**3.** Former Article 1018 provided that costs could be charged to the accused when convicted. Specific costs enumerated in Title 2 of the current Code are recoverable from the accused only after he has been convicted. Articles 42.15 and 42.16 contemplate assessment of costs in a judgment of conviction. Reimbursement of attorney's fees may be imposed as a condition of probation, Article 42.12, § 11(11), V.A.C.C.P., or as a condition of parole, Article 42.18, § 8(g), V.A.C.C.P. But there is no provision for including an assessment of costs against the accused in a judgment of acquittal. Indeed, Article 37.12 provides that upon acquittal the accused "shall be at once discharged from all further liability upon the charge for which he was tried."