OPINION


No. 04-07-00004-CV


Craig Michael REED,

Appellant

 

v.

 

The STATE of Texas,

Appellee


From the 25th Judicial District Court, Guadalupe
County, Texas

Trial Court No.
00-1456-CR

Honorable Gary L.
Steel, Judge Presiding





Opinion by:     Rebecca Simmons,
Justice

 

Sitting:                        Karen Angelini, Justice

Rebecca Simmons, Justice

Steven C. Hilbig,
concurring in the judgment only


Delivered and Filed: July 9, 2008 





REVERSED AND REMANDED


The primary issue in this appeal is whether this court has jurisdiction over an
appeal from a trial court's order to the Texas Department of Criminal Justice
Institutional Division ("TDCJ") to withdraw funds from Appellant
Craig Michael Reed's inmate trust account. Reed complains that the trial court
issued the order requiring the TDCJ to withdraw funds from his inmate trust
account without authority and without due process of law. We conclude that this
court has jurisdiction, reverse the trial court's order and remand for further
proceedings. 

Background

On September 26, 2005, Reed was sentenced to
community supervision for the offense of unauthorized use of a motor vehicle.
On November 9, 2005, the trial court entered a judgment revoking Reed's
community supervision. A second judgment was entered sentencing Reed to two
years confinement in the state jail division of the TDCJ and assessing court
costs against Reed in the amount of $640.00.

In order to make purchases from the prison
commissary, Reed opened an inmate trust account. These accounts are centrally
managed by TDCJ's Commissary and Inmate Trust Fund.
The funds are used solely for inmate commissary purchases and are funded by the
periodic deposit of money by the inmate's arrangement. (1)


Pursuant to Section 501.014(e) of the Texas Government Code, (2) 

on October 23, 2006, the
trial court issued an order to the TDCJ to withdraw money from Reed's inmate
trust account and forward the funds to the district clerk to pay for the court
costs assessed in the underlying judgment of November 9, 2005. On November 28,
2006, Reed filed a motion and objection requesting the court's order be either
withdrawn or stayed. No action was taken by the trial court. On appeal, Reed
contends that the order was issued without authority and due process of law. 

Analysis 

On March 8, 2007, we ordered the parties to
address whether this court has jurisdiction over Reed's appeal in their
briefing. The State contends that an order pursuant to section 501.014(e) is
not independently appealable from the underlying judgment. Tex. Gov't Code Ann. § 501.014(e) (Vernon
2004). Reed, on the other hand, argues that this is a final
post-judgment order which is independent from the underlying judgment and is
appealable. 

A. Jurisdiction 

1. Civil or Criminal

There is disagreement among the courts of appeals
over whether orders pursuant to section 501.014(e) of the Government Code are
appealable. In Abdullah v. State, 211 S.W.3d 938 (Tex. App.--Texarkana 2007, no pet.),
Abdullah similarly appealed an order issued pursuant to section 501.014. In
determining that Abdullah had a right to appeal, the appellate court analogized
the section 501.014 order to a writ of garnishment order and turnover order and
concluded that it was a civil appeal separate and independent of the underlying
judgment. Id. at 940-41. In contrast, in Gross v. State, No.
07-06-00489-CR, 2007 WL 2089365, at *1 (Tex. App.--Amarillo July 23, 2007, no
pet.), the court of appeals concluded that the section 501.014 order was
closely related to the underlying criminal case and as a result, the only
appealable order was the judgment that included the assessment of court costs.
Specifically, the Amarillo
court noted:

[u]nlike the situation
in Abdullah, appellant was assessed court costs and attorney fees at
the conclusion of trial. The reimbursement of the expenses
incurred by the taxpayers were incorporated into the judgment which was
signed by the trial court on October 16, 2003. By virtue of the inclusion of
these fees in the judgment, appellant had notice that he would be required to
pay court costs and attorney fees. Hence, we conclude that the issue of
recoupment of attorney fees is closely related to the criminal case. See Tex.
Code Crim. Proc. Ann. art. 26.05(g) (Vernon
Supp. 2006); Curry [v. Wilson],
853 SW.2d 40, 43 (Tex. Crim. App. 1993). 

Id.
The Waco
court of appeals agrees with the premise in Gross, i.e., that a
section 501.014 order is closely connected to the underlying criminal case and
is, therefore, not independently appealable. Zink v.
State, 244 S.W.3d 508, 509 (Tex.
App.--Waco 2007, no pet.).

This case is distinguishable from Gross
in that article 26.05(g) is not implicated here. Tex. Code Crim. Proc. Ann. art. 26.05(g) (Vernon Supp. 2007).
Article 26.05(g) allows a court to order the defendant to pay for his appointed
attorney's fees as court costs upon the court's determination that the
defendant has sufficient financial resources. Id. This provision,
however, does not address how the attorneys' fees are to be collected. See Mullings v. Morgan, 891 S.W.2d 15, 16-17 (Tex.
App.--Eastland 1994, orig. proceeding) (Article 26.05 does not authorize
seizure of unencumbered assets to pay costs.). In the present case, the court's
ability to assess costs is not an issue. The complaint concerns the methods
employed to collect those costs. Thus, article 26.05(g) simply is not
implicated. 

Likewise, Curry v. Wilson, 853 S.W.2d 40
(Tex. Crim. App. 1993), relied upon in Gross, is distinguishable from
this case. In Curry, the trial court appointed legal counsel for the
defendant. Id. at 42. After the defendant was acquitted, the trial court
determined that, pursuant to article 26.05, the defendant was not indigent and
informed the defendant that he would be required to pay the costs of legal
services. Id.
The defendant filed a writ of prohibition to the Court of Criminal Appeals
contending that article 26.05 violated the Due Process and Equal Protection
Provisions of the Texas
and Federal Constitution. Id.
at 43-45. Because a court has the power to issue writs of prohibition only in
criminal law matters, the court addressed whether it had jurisdiction. Id. at 43. The court noted that "[d]isputes
which arise over the enforcement of statutes governed by the Texas Code of
Criminal Procedure, and which arise as a result of or incident to a criminal
prosecution, are criminal law matters." Id.

While the order in the instant case may have
arisen as a result of, or incidental to, a criminal prosecution, the trial
court's order does not arise over the enforcement of a statute governed by the
Texas Code of Criminal Procedure. In fact, the order specifically provides
"THE COURT ENTERS THIS ORDER pursuant to Government Code, Section 501.014
. . . ." Reed is not contesting the trial court's authority to assess
court costs against him. Instead, the dispute is over the trial court's
authority to collect the costs assessed under section 501.014(e) of the Texas
Government Code. Tex. Gov't Code Ann. § 501.014(e). We
note the legislature has determined that costs in criminal judgments may be
collected through a civil execution process. Tex. Code Crim. Proc. Ann. art. 43.07 (Vernon Supp. 2008).
Article 43.07 of the Texas Code of Criminal Procedure provides in relevant
part: "[i]n each case of pecuniary fine, an
execution may issue for the fine and costs . . . . The execution shall be
collected and returned as in civil actions." Id. Consequently, we are
unable to conclude that the trial court's order involves a criminal law matter
as described in Curry. 

2. Final and Appealable 

Having determined that this matter is civil, we
next address whether the trial court's order is final and appealable. The trial
court's order in this case was for the collection of court costs through a
post-judgment process. In civil actions, post-judgment orders may be appealed
as final orders if the order disposes of all matters placed before the court. Wolma v. Gonzalez, 822 S.W.2d 302, 304
(Tex. App.--San Antonio 1991, orig. proceeding), disapproved on other
grounds, Scott & White Mem. Hosp. v. Schexnider, 940 S.W.3d 594, 596 n.2 (Tex. 1996); see Cook v. Stallcup, 170 S.W.3d 916, 920 (Tex. App.--Dallas 2005,
no pet.) (stating "[p]ost-judgment
orders embodying awards to claimants or enforcing the court's judgment itself
are appealable orders; they function like judgments"). Both garnishment
orders and turnover orders are appealable. Schultz v.
Fifth Jud. Dist. Ct. of Appeals, 810 S.W.2d 738, 740 (Tex.
1991) (turnover orders appealable). Although there is no
post-judgment motion in the record, the trial court's order leaves nothing for
further decision. Indeed, that is the foundation of Reed's contention: there
was no opportunity for him to challenge or contest the trial court's order
either before or after it was issued.

In sum, the trial court's order in this case is
an appealable order in that it is a final order and stems from a civil
proceeding which was separate and independent from the judgment assessing
Reed's conviction, sentence, and court costs. We now turn to the merits of
Reed's claims in this appeal.

B. Authority to Issue Order 

Reed asserts that section 501.014(e) provides no
authority for the trial court to have issued the collection order at issue in
this appeal and, therefore, the order is "void." In support of this
argument, Reed cites Mullings v. Morgan,
891 S.W.2d 15 (Tex. App.--Eastland 1994, orig. proceeding), for the proposition
that while the trial court had authority to assess costs in the underlying
judgment, it had no authority to order the manner in which those costs were to
be collected. Id at 16-17 (granting mandamus against trial court order that
required defendant to sell her automobile in order to satisfy assessment of
legal fees under prior version of article 26.05(g) of the Code of Criminal
Procedure).

We do not agree that the trial court lacked
authority. By making notification by a court the triggering event for
the TDCJ's obligations under section 501.014(e),
section 501.014(e) plainly authorizes the trial court to inform the TDCJ of an
inmate's obligations to pay under one of the enumerated types of orders. See,
e.g., Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
865 (Tex. 1999) ("[I]t is cardinal law in Texas that a court construes a
statute, first, by looking to the plain and common meaning of the statute's
words.") (internal quotation omitted). To the extent
the order at issue in this appeal served as notice to the TDCJ, it is not
"void." Id. (3) 

This holding, however, does not end the inquiry.
Reed argues that the order was issued in violation of his due process rights to
notice and an opportunity to be heard. (4) 

C. Due Process

The Fourteenth Amendment of the United States
Constitution guards against deprivation of life, liberty, or property by the
State without due process of law. U.S. Const. amend.
XIV. Similarly, Article I, Section 19 of the Texas Constitution requires due
course of law. Tex. Const. art. I, § 19; Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001). At a minimum, due course
requires notice and an opportunity to be heard, at a meaningful time and in a
meaningful manner. Perry, 67 S.W.3d at 92. 

A procedural due process claim must establish (1)
an existing liberty or property interest and (2) the procedures provided were
constitutionally insufficient. Id.
"A prison inmate has a property interest in his inmate trust
account." Covarrubias v. Tex.
Dep't of Criminal Justice - Inst. Div., 52 S.W.3d 318, 324 (Tex. App.--Corpus
Christi 2001, no pet.); Brewer v. Collins, 857 S.W.2d 819, 823 (Tex.
App.--Houston [1st Dist.] 1993, no pet.). Reed, therefore, meets the
first requirement. Thus, the question to be answered is what process is due
before money from Reed's inmate trust account can be applied toward court
costs. 

1. The Mathews Balancing Test 

Courts utilize the three-part balancing test first
announced in Mathews v. Eldridge, 424 U.S. 319 (1996), to determine
whether procedural due process has been violated. Univ. of Tex. Med. School v. Than, 901 S.W.2d 926, 930 (Tex. 1995). The
factors to be balanced are:

(1) the private interest
that will be affected by the official action;

(2) the risk of an erroneous
deprivation of such interest through the procedures used, and the probable
value of additional or substitute procedures; and

(3) the government's
interest, including, the function involved and the fiscal and administrative burdens
that the additional substitute procedural requirement would entail.

Id.; see also Washington v.
Harper, 494 U.S.
210, 229 (1990) (applying Mathews factors to prisoner's due process
attack on prison policy).

a. The Private Interest
Affected

Identifying the first factor is not difficult.
The private interest affected is Reed's interest in his personal funds. We
note, however, that inmates are not entitled to complete control over their
money. See Hatfield v. Scott, 306 F.3d 223, 224-25 (5th Cir. 2002)
(earned interest on prisoner's accounts may be used to pay for administration
of beneficial fund).

b. The Risk of Erroneous
Deprivation, and the Benefit of Additional Procedures

We next examine the second factor - the risk of
erroneous deprivation of Reed's private interest through the procedures used,
and the probable value of additional or substitute procedures. There are no
procedures outlined in section 501.014 of the Government Code for either notice
or an opportunity to be heard prior to the withdrawal of money from the
inmate's account. (5) The risk of wrongful
deprivation without some procedure for notice and hearing, however, is reduced
because the notification of withdrawal must be based on some form of court
order, judgment or writ. Tex.
Gov't Code Ann. §§ 501.014(e)(1)-(6).
Because the inmate would have been a party to the underlying action, notice and
a hearing on the amounts assessed in the underlying court order, judgment or
writ is satisfied. Gross, 2007 WL 2089365, at *1 (inclusion of costs
and fees in judgment was notice to inmate he would be required to pay court
costs and attorney fees); see also Spradley v.
Martin, 897 F. Supp. 560, 565 (M.D. Fla. 1995) (inmate was afforded notice
and opportunity to be heard with respect to court costs when state filed a
motion for taxation of costs and the inmate filed a response thereto in the
underlying action - no other hearing required before deprivation).
Additionally, we note that most post-judgment collection processes do not
require notice or a hearing before property may be levied. See Ex Parte
Johnson, 654 S.W.2d 415, 418 (Tex. 1983)
(notice and hearing prior to issuance of turnover order not required); Endicott-Johnson
Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 288 (1924) (notice and
hearing before execution unnecessary). Yet, execution, turnover and garnishment
all provide an opportunity to replevy or for the
judgment debtor to contest the method, amount, or irregularities associated
with the collection.

In the present case, the assessment of cost was
adjudicated during the criminal case and no complaint is made of the amount.
Yet, clerical and other errors may occur and there are no procedures in place
to dispute questionable withdrawal orders such as those presented in Abdullah,
211 S.W.3d at 940 (judgment did not contain assessment of costs and fees); In
re Keeling, 227 S.W.3d 391, 392-93 (Tex. App.--Waco 2007, orig.
proceeding) (supplemental bill of costs presented from prior conviction for
which inmate had been paroled); and In re Martinez, 238 S.W.3d 601,
602 (Tex. App.--Waco 2007, orig. proceeding) (judgment assessed costs at $308,
but withdrawal order sought $7,317.47). In this case, there was no opportunity
for Reed to present his substantive claims regarding the merits of the order. (6) Thus, there is a risk under the current
procedures of an erroneous deprivation of an inmate's interest without the
opportunity to contest the withdrawal. We now examine the probable value of
additional or substitute procedures.

In Abdullah, the court grafted
garnishment procedures onto section 501.014(e) as a solution to due process
concerns. We disagree, however, with the court's holding in Abdullah
that the garnishment procedures set forth in section 63.007 of the Texas Civil
Practice and Remedies Code are applicable to the inmate trust fund. (7) 

Tex. Civ. Prac. & Rem. Code Ann. §
63.007 (Vernon
1997). A garnishment action is a procedure available to a judgment
creditor by which he can inquire into the relationship between a third party
and the judgment debtor to determine if there are any funds owed to the
judgment debtor by the third party. Id. at
§§ 63.001-.008. It requires a separate lawsuit against the third party
consisting of an application supported by affidavits affirming that the
defendant does not possess property in Texas
subject to execution sufficient to satisfy the debt. It also requires a bond. Tex. R. Civ. P. 657-674.
In the case before us, however, the creditor and the third party are
effectively the same; the creditor is the State of Texas and the party holding the funds, the
TDCJ, is an agency of the State. See Martin v. Tex.
Bd. of Criminal Justice, 60 S.W.3d 226, 229 (Tex. App.--Corpus
Christi 2001, no pet.) (recognizing that TDCJ is a
state agency); Lowe v. Tex. Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976) (holding a
suit against an agency of the state is a suit against the state). It is
unlikely that the legislature envisioned that, under section 63.007, the State
of Texas
would have to sue its agency, the TDCJ, each time it sought to collect the
costs assessed in an inmate's criminal judgment. (8)
Section 63.007 merely waives sovereign immunity to suit for those outside
creditors who seek to collect funds from inmate trust accounts. Tex. Civ. Prac. &
Rem. Code Ann. § 63.007. Garnishment procedures are not applicable or
required to obtain inmate trust account funds under section 501.014. Tex. Gov't Code Ann. § 501.014.

c. The State's Interest, and
Fiscal and Administrative Burdens of Additional Procedures 

While garnishment or other post-judgment remedies
certainly would provide ample due process to inmates, we must balance the third
factor of the government's interest including the fiscal and administrative
burdens the additional procedures would require. The government's interest is
the payment of court costs. The State has a significant interest in assuring
that persons with financial resources pay their costs and "not take a free
ride at the expense of its taxpayers." Gross, 2007 WL 2089365, at
*1. The State's interest in maintaining administrative control over prisons and
inmate accounts is also significant. Courts are not ideally situated to oversee
the minute details of prison administration. Procunier
v. Martinez, 416 U.S.
396, 404-05 (1974), overruled on other grounds, Thornburgh v.
Abbott, 490 U.S. 401 (1989). Clearly, the implementation of all the
procedural safeguards associated with turnover or garnishment would be highly
burdensome and costly to the TDCJ and likely would result in the inability of
the TDCJ to efficiently collect any of the judgments or orders referenced in
section 501.014. See Hickson v.
Moya, 926 S.W.2d 397, 399 (Tex. App.--Waco 1996,
no writ) (recognizing flood of frivolous lawsuits filed by prison inmates
consuming valuable judicial resources). 

2. Balancing the Mathews Factors in this Case

In striking the proper balance between the three Mathews
factors in this case, Mahers v. Halford, 76 F.3d 951 (8th Cir. 1996), a federal case
involving restitution, is instructive. In Mahers,
the court examined the due process to be accorded inmates before deductions
were made from their trust accounts for restitution. Id. at 953-56. The court reviewed the procedural
protections accorded the inmate, including the ability for any inmate, upon
petition, to obtain review of any matter related to an inmate's restitution
plan or plan of payment at any time during the inmate's incarceration. Id. at 955-56. The feature distinguishing the procedure in Mahers from the current procedures available to
Reed is that the inmate was provided some opportunity to be heard.

In balancing all three Mathews
factors, we conclude that the lack of an opportunity to be heard regarding
withdrawals from Reed's inmate trust account violated procedural due process
requirements. This is not a case where the inmate was afforded no due
process - the underlying final judgment, which Reed was free to contest
post-judgment and on appeal, included the amount of the court costs, and Reed
received a copy of the order authorizing the withdrawal of funds. Nonetheless,
Reed's due process rights were violated because his claims regarding the merits
of the order have not been heard in any forum. (9)

We are constrained, however, in fashioning a
remedy because the trial court has not yet addressed the merits of Reed's
claims contained in his "Pro Se Motion Objection to the Court's 10/23/2006
Order, for the Court to Withdraw the Order or in the Alternative for the Order
to be Stayed Durining [sic] the Pendency of an
Appeal," and thus there is nothing for us to review on appeal.
Accordingly, we remand this action for further proceedings.

Conclusion

An order issued pursuant to section 501.014 of the Texas Government Code is
civil in nature and may be a final appealable order. The order in this case is
a final appealable order. Reed did not, however, receive the minimum procedural
due process requirements. As a result, we reverse the order of the trial court
and remand this cause for further proceedings consistent with this opinion.


                                                                                                Rebecca
Simmons, Justice





1. For further discussion of inmate accounts see
http://www.tdcj.state.tx.us/finance/comm&trust/comm&trust-
home.htm (last visited May 6, 2008); Hatfield v. Scott,
306 F.3d 223, 224-25 (5th Cir. 2002). 

2. Section 501.014(e) provides

[o]n notification by a
court, the department shall withdraw from an inmate's account any amount the
inmate is ordered to pay by order of the court under this subsection. The
department shall make a payment under this subsection as ordered by the court
to either the court or the party specified in the court order. The department
is not liable for withdrawing or failing to withdraw money or making payments
or failing to make payments under this subsection. The department shall make
withdrawals and payments from an inmate's account under this subsection
according to the following schedule of priorities:

. . . . 

(4) as
payment in full for all orders for court fees and costs; . . . . 


Tex. Gov't Code Ann. § 501.014
(Vernon 2004) 


3. We express no opinion on whether the court's notification
to the TDCJ can be by some means other than a formal order. 

4. Reed does not argue that section 501.014(e) is
facially unconstitutional. 

5. Although there is no specific procedure requiring
notice, Reed received a copy of the Order for withdrawal of funds from his
account. 

6. Reed appears to assert that the state may not collect
costs from his trust account because he is indigent and because the money in
his trust account is from family and friends. We express no opinion on the
validity of any such claims. 

7. Section 63.007 of the Texas Civil Practice and
Remedies Code provides:  

(a) A writ of garnishment may be issued
against an inmate trust fund held under the authority of the Texas Department
of Criminal Justice under Section 501.014, Government Code, to encumber money
that is held for the benefit of an inmate in the fund. 

(b) The state's sovereign immunity to suit
is waived only to the extent necessary to authorize a garnishment action in
accordance with this section. 

Tex. Civ. Prac. &
Rem. Code Ann. § 63.007 (Vernon
1997). 

8. Section 63.007 was implemented in 1997 four years
after the procedure for obtaining inmate funds was established by section
501.014(e). Tex. Gov't Code § 501.014(e) as added by
Acts 1993, 73rd Leg., ch. 804, § 1, eff. Sept. 1,
1993. 

9. We note that other statutes, such as Chapter 14 of the
Texas Civil Practice and Remedies Code dealing with inmate litigation, provide
for some type of forum in which inmates claims can be heard.