HOUSTON CHRONICLE PUBLISHING
COMPANY, Relator,

v.

The Honorable W.G. WOODS,
Jr., Respondent.

No. 09–97–172 CV.

Court of Appeals of Texas,
Beaumont.

Submitted June 12, 1997.

Decided July 10, 1997.

Joel R. White, Ogden, Gibson, White & Broocks, Houston, for appellant.

Michael R. Little, District Attorney, Liberty, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

This is a mandamus action. The Hearst Corporation, d/b/a the Houston Chronicle Publishing Company (Chronicle), seeks a writ ordering Judge W.G. Woods, Jr., to set aside two orders. One order denies the Chronicle's motion to produce judicial records while the other grants the State's first amended motion to seal affidavits. Both of these orders grow out of a criminal proceeding. Robert Brice Morrow was indicted, in Liberty County, for capital murder. During the course of the investigation, Judge Woods issued two search warrants. Both warrants were executed and returned. On December 23, 1996, the Chronicle filed its motion to produce judicial records. The motion requested release of all affidavits executed in support of the arrest warrant for Morrow, affidavits executed in support of any search warrants issued in the case and transcripts of any proceedings held by the court to seal any records. The motion alleged three grounds: the common law, the United States and Texas Constitutions, and TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon 1977 & Supp. 1997)[1]. The motion also alleged an oral motion had been made and a hearing held on December 18, 1996, with the court ruling the documents would be made available during the trial. On April 10, 1997, the State filed a motion to seal affidavits; the State then amended its motion. The motion requested the court seal any affidavits in support of any search or arrest warrants without specifying any reasons or grounds. On April 17 the

---

1. **Art. 18.01. Search warrant**
   (b) No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance.

A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested. The affidavit is public information if executed.

court conducted a hearing on both motions. No evidence was presented, but the two search warrant affidavits were forwarded to this court under seal. Morrow's attorney stated he neither joined nor opposed either side.

On April 28 the court entered two orders. The order denying the Chronicle's motion states, in pertinent part:

> The Court ... makes the following findings:
>
> (1) The affidavits constitute inadmissible hearsay which would not be admissible before a jury in this case;
>
> (2) The affidavits contain information that is prejudicial to the defendant in this case;
>
> (3) The release of the affidavits would adversely affect the defendant's constitutional and statutory rights to a fair trial in this case;
>
> (4) The defendant's constitutional and statutory rights to a fair trial are superior to any rights of the Houston Chronicle and Article 18.01(b), Texas Code of Criminal Procedure;
>
> (5) The release of the affidavits would adversely affect the close relatives of the victim in this case;
>
> (6) Potentially, the release of the affidavits could adversely affect the taxpayers of Liberty County in the event of a change of venue as a result of any publication of the affidavits by the Houston Chronicle; and
>
> (7) The Houston Chronicle has been provided with a copy of the only transcript of any proceeding held prior to April 17, 1997, to seal the affidavits.

The Court has considered whether there are less restrictive alternatives to refusing the Houston Chronicle's request for access to the affidavits, but the court has determined that there are none at this time.

The order granting the State's motion states, in pertinent part:

> ... all search warrant affidavits and all arrest warrant affidavits, including any copies of said affidavits currently in the possession of the parties in this case (specifically including the Liberty County District Attorney's Office, the Defendant, and the Defendant's legal representatives), are sealed and are to be maintained in a confidential manner without any display or production whatsoever to the public, the press, and all other persons, entities, and organizations of any nature.

The Chronicle, in this proceeding, argues mandamus is appropriate because there is no adequate remedy at law, Judge Woods' refusal to comply with art. 18.01(b) is a clear abuse of discretion,[2] the orders violate the First Amendment of the United States Constitution, and the orders violate Art. I, § 8 of the Texas Constitution.

At the April 17 hearing, the State argued: "these documents contain a great deal of inculpatory information to the defendant" [sic], the documents are hearsay, the release of the documents will jeopardize the defendant's right to a fair trial in that the jury pool will have access to the information and the release of the documents will impact any change of venue motion. Before this court, the State argues mandamus will not lie because there is an adequate remedy at law, i.e. an appeal under TEX.R. CIV. P. 76a(8),[3] man-

---

**2.** We are reluctant to characterize this as a case of first impression since the parties do not. However, the parties do not cite any case directly on point and our research reveals none. The only mention found of this particular portion of art. 18.01(b) is in *Savery v. State*, 782 S.W.2d 321, 326 (Tex.App.—Beaumont 1989), *aff'd*, 819 S.W.2d 837 (Tex.Crim.App.1991). In that case, the defendant raised, in a motion to suppress hearing, that the search warrant affidavit did not comply with art. 18.01 because it had not been public information as required and therefore, the warrant, itself, was facially invalid. The court did not reach the substantive issue because, from the file marks on the instruments, it found they

had been filed and, thus, were public information, as required by the statute.

**3.** Rule 76a. SEALING COURT RECORDS ...

**8.** Appeal. Any order (or portion of an order or judgment) relating to sealing or unsealing court records shall be deemed to be severed from the case and a final judgment which may be appealed by any party or intervenor who participated in the hearing preceding issuance of such order. The appellate court may abate the appeal and order the trial court to direct that further public notice be given, or to hold further hearings, or to make additional findings.

damus will not lie because the Chronicle has not shown Judge Woods abused his discretion or was arbitrary, the defendant's right to a fair trial is paramount to the Chronicle's first amendment rights under the United States Constitution, and the orders do not violate the Texas Constitution.

## CRIMINAL VS. CIVIL MATTER

■ The State argues "[a]lthough not expressly referenced in the State's motion to seal the affidavits, its motion was presumptively governed by Rule 76a[4] for the reason that there is no other statute or rule in Texas (either civil or criminal) which governs the sealing of court records." They further argue the Chronicle was not a party to the criminal proceeding and thus the motion was ancillary to the criminal proceeding and civil in nature. Furthermore, since the 253rd District Court is a court of general jurisdiction hearing both civil and criminal matters, Judge Woods was authorized to consider the State's motion in accordance with Rule 76a.

In *State ex rel. Holmes v. Honorable Court of Appeals for Third Dist.*, 885 S.W.2d 389,

393 (Tex.Crim.App.1994)(quoting *Curry v. Wilson*, 853 S.W.2d 40, 43 (Tex.Crim.App. 1993)), the Court of Criminal Appeals, in discussing this issue stated:

> While no rule precisely defines the limits of a criminal law matter, we enunciated a general rule in *Curry v. Wilson* .... We explained that criminal law matters are those: "... Disputes which arise over the enforcement of statutes governed by the Texas Code of Criminal Procedure, and which arise as a result of or incident to a criminal prosecution...."

*Curry v. Wilson*, 853 S.W.2d at 40, involved a trial judge attempting to recoup legal fees paid to Curry's court appointed attorney, after Curry's acquittal, because the judge believed Curry was no longer indigent. The court noted the judge's authority to order recoupment arose from the Code of Criminal Procedure and the legal services were incurred in the course of a criminal trial. *Id.* at 43. The court concluded the dispute was a criminal law matter and had jurisdiction to hear the case. *Id.* [5]

### 4. RULE 76a. SEALING COURT RECORDS

**1. Standard for Sealing Court Records.** Court records may not be removed from court files except as permitted by statute or rule. No court order or opinion issued in the adjudication of a case may be sealed. Other court records, as defined in this rule, are presumed to be open to the general public and may be sealed only upon a showing of all of the following:

(a) a specific, serious and substantial interest which clearly outweighs:

(1) this presumption of openness;

(2) any probable adverse effect that sealing will have upon the general public health or safety;

(b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

**2. Court Records.** For purposes of this rule, court records means:

(a) all documents of any nature filed in connection with any matter before any civil court, except:

(1) documents filed with a court in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents;

(2) documents in court files to which access is otherwise restricted by law;

(3) documents filed in an action originally arising under the Family Code.

(b) settlement agreements not filed of record, excluding all reference to any monetary consideration, that seek to restrict disclosure of infor-

mation concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government.

(c) discovery, not filed of record, concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government, except discovery in cases originally initiated to preserve bona fide trade secrets or other intangible property rights.

.    .    .    .    .

**9. Application.** Access to documents in court files not defined as court records by this rule remains governed by existing law. This rule does not apply to any court records sealed in an action in which a final judgment has been entered before its effective date. This rule applies to cases already pending on its effective date only with regard to:

(a) all court records filed or exchanged after the effective date;

(b) any motion to alter or vacate an order restricting access to court records, issued before the effective date.

**5.** *See also Lanford v. Fourteenth Court of Appeals,* 847 S.W.2d 581 (Tex.Crim.App.1993)(dispute over the assignment of "former judge" in a criminal court was a criminal law matter); *Smith v. Flack,* 728 S.W.2d 784, 788–89 (Tex.Crim.App.1987)(payment of attorney's fees

Since this dispute arises incident to a criminal prosecution and is based, in part, on the enforcement of a provision of the Texas Code of Criminal Procedure, it is, undoubtedly, a criminal law matter.

## MANDAMUS AS A REMEDY

■ The courts of appeals have mandamus jurisdiction over criminal law matters concurrent with the mandamus jurisdiction of the Court of Criminal Appeals. *Dickens,* 727 S.W.2d at 548. *See Eagle Printing Co. v. Delaney,* 671 S.W.2d 883 (Tex.Crim.App.1984)(mandamus appropriate when newspaper seeks to set aside judge's order closing proceedings to the press). "In cases where the court of appeals is called upon to issue a writ of mandamus in a criminal matter, the relator must meet a two-pronged test. *De Leon v. Pennington,* 759 S.W.2d 201, 202 (Tex.App.—San Antonio 1988, orig. proceeding). The relator must show (1) he has no other adequate remedy at law, and (2) the act he demands the trial court perform is a ministerial act." [6] *Baize v. Shaver,* 935 S.W.2d 498, 499 (Tex.App.—Houston [1st Dist.] 1996, orig. proceeding) (citing *State ex rel. Healey v. McMeans,* 884 S.W.2d 772, 774 (Tex.Crim.App.1994)); *Brax-*

was a criminal law matter); *Collier v. Poe,* 732 S.W.2d 332, 334 (Tex.Crim.App.), *cert. dism'd,* 484 U.S. 805, 108 S.Ct. 51, 98 L.Ed.2d 15 (1987) (denial of motion for legislative continuance during criminal trial was a criminal law matter); *Dickens v. Court of Appeals For Second Supreme Judicial Dist. of Tex.,* 727 S.W.2d 542, 546 (Tex.Crim.App.1987)(criminal discovery law was a criminal law matter within Court's mandamus jurisdiction); *Weiner v. Dial,* 653 S.W.2d 786, 787 (Tex.Crim.App.1983)(appointment and compensation of attorneys to represent criminal clients pursuant was a criminal law matter).

6. The parties briefed and argued the civil standard of "abuse of discretion." *See Walker v. Packer,* 827 S.W.2d 833 (Tex.1992). Some courts of appeal have used the civil standard in mandamus cases in criminal law matters. *See Houston Chronicle Publ'g Co. v. Crapitto,* 907 S.W.2d 99 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding); *San Antonio Express–News v. Roman,* 861 S.W.2d 265 (Tex.App.—San Antonio 1993, orig. proceeding); *Brown v. Underwood,* 748 S.W.2d 513 (Tex.App.—Beaumont 1988, orig. proceeding)(Burgess, J, dissenting).

7. Tex Code Crim. Proc Ann. art. 44.02 (Vernon 1979).

*ton v. Dunn,* 803 S.W.2d 318, 320 (Tex.Crim. App.1991).

## ADEQUATE REMEDY AT LAW

■ The Code of Criminal Procedure acknowledges the right of a defendant, in any criminal action, to appeal [7] and the entitlement of the State, in a criminal case, to limited appeals [8]. Generally only parties are allowed to appeal.[9] *See Houston Chronicle Publ'g Co. v. Crapitto,* 907 S.W.2d 99 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding)(newspaper had no right to appeal closing of voir dire, thus mandamus appropriate). As previously noted, the State argues this is a civil matter and thus Rule 76a applies [10] and specifically, on this issue, Rule 76a(8). They would be correct if this were a civil matter,[11] *see State Bar of Texas v. Jefferson,* 942 S.W.2d 575, 40 Tex. Sup.Ct. J. 463 (April 2, 1997), but it is not. Consequently, the Chronicle has no adequate remedy at law.

## MINISTERIAL ACT

■ An act is ministerial "when the law clearly spells out the duty to be performed ... with such certainty that nothing is left to the exercise of discretion or judgment."

8. Tex.Code Crim. Proc. Ann. art. 44.01 (Vernon 1979 & Supp.1997).

9. The State admits the Chronicle was not a party to the criminal proceeding.

10. The State acknowledges, in their brief, no other statute or rule in Texas (either civil or criminal) governs the sealing of court records.

11. Paragraph 2 says: "For purposes of this rule, court records means: (a) all documents of any nature filed in connection with any matter before any *civil* court...." Tex.R.App P.76a(2) (emphasis added). Paragraph 9 states: "Access to documents in court files not defined as court records by this rule remains governed by existing law." The comments accompanying the rule state: "New rule to establish guidelines for sealing certain court records in compliance with Government Code Sec. 22.010." The legislature directed the supreme court to adopt rules regarding the sealing of " records in a civil case." Tex. Gov't Code Ann. § 22.010 (Vernon 1988 & Supp. 1997).

*State ex rel. Healey,* 884 S.W.2d at 774 (quoting *Texas Dept. of Corrections v. Dalehite,* 623 S.W.2d 420, 424 (Tex.Crim.App.1981)). Therefore, if the language of art. 18.01(b), "[t]he affidavit is public information if executed," is not ambiguous, i.e, if it is truly public information without any exceptions, the release of the information is ministerial and nothing is left to Judge Woods' discretion.

## THE EXCEPTION ISSUE

The statute, on its face, does not contain any exceptions. In other words, it does not read, "the affidavit, if executed, is public information, unless the trial judge, in his discretion, orders the affidavit sealed," or words to that effect. Our duty is to determine the intent of the Legislature in enacting the statute, that is, did the legislature intend an exception? *See Patterson v. State,* 769 S.W.2d 938, 940 (Tex.Crim.App.1989). "If the meaning of the statutory text, when read using established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning." *Schultz v. State,* 923 S.W.2d 1, 2, (Tex.Crim.App.1996)(citing *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991)). In *Boykin,* 818 S.W.2d at 785–86, the court stated:

> When we interpret statutes . . ., we seek to effectuate the "collective" intent or purpose of the legislators who enacted the legislation. *Camacho v. State,* 765 S.W.2d 431 (Tex.Cr.App.1989). We do so because our state constitution assigns the law*making* function to the Legislature while assigning the law *interpreting* function to the Judiciary. See Tex. Const. art. II, § 1.

> When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. We do this because the text of the statute *is the law* in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature. We focus on the literal text also because the text is

the only *definitive* evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law. There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment. Yet a third reason for focusing on the literal text is that the Legislature is *constitutionally entitled* to expect that the Judiciary will faithfully follow the specific text that was adopted.

Thus, if the meaning of the statutory text, when read using the established canons of construction relating to such text, [footnote omitted] should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. *Smith v. State,* 789 S.W.2d 590, 592 (Tex. Cr.App.1990). " 'Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.' " *Coit v. State,* 808 S.W.2d 473, 475 (Tex. Cr.App.1991) (quoting *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Cr.App.1967)).

There is, of course, a legitimate exception to this plain meaning rule: where application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally. *Faulk v. State,* 608 S.W.2d 625, 630 (Tex.Cr.App.1980). When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way.

If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then,* out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra* textual factors as executive or administrative interpretations of the statute or legislative history. [footnote omitted.]

This method of statutory interpretation is of ancient origin and is, in fact, the only method that does not unnecessarily invade the lawmaking province of the Legislature. The courts of this and other jurisdictions, as well as many commentators, have long recognized and accepted this method as constitutionally and logically compelled.

As recently as last year, the court in *State v. Mancuso*, 919 S.W.2d 86, 87 (Tex.Crim. App.1996) (citations omitted), reaffirmed that proposition when they stated:

> It is the duty of the Legislature to make laws, and it is the function of the Judiciary to interpret those laws. "When we interpret statutes we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." Consequently, we focus on the text of the statute and interpret it in a literal manner attempting to discern the fair, objective meaning of the text. It is our duty while interpreting the statute to give the ordinary and plain meaning to the language of the Legislature. "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." Only when the application of a statute's plain language is ambiguous or would lead to absurd consequences which the Legislature could not possibly have intended, should we look to extratextual factors.

■ If the literal text of Article 18.01(b) is clear on its face, we should not strain its plain meaning in order to give the statute a "desirable" reading. *See Smith v. State*, 789 S.W.2d 590 (Tex.Crim.App.1990). We should inquire into the legislative history only if an examination of the literal text discloses some obfuscation or patent ambiguity. Because, on its face, the literal text of Article 18.01(b)

is clear, we will construe the statute according to its plain meaning and dispose of this case without reliance on its legislative history.[12] In other words, we focus on the meaning a typical legislator would have given the specific language of the statute at the time of its enactment. *See State v. Muller*, 829 S.W.2d 805, 808 (Tex.Crim.App.1992).

■ With these guidelines in mind, we hold the legislature did not intend any exception to the literal text, since it could have explicitly placed such an exception into the statute, yet did not do so. Moreover, our interpretation does not lead to any absurd consequences which the Legislature could not possibly have intended. *See Matchett v. State*, 941 S.W.2d 922, 929–30 (Tex.Crim.App. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997).

## PUBLIC INFORMATION— PLAIN MEANING

■ The State makes a sub-argument that Judge Woods' comments about unsealing the affidavits after jury selection, or some other time during the trial, comports with the statute since the affidavits will become public information at that time, thus, the words "public information" allow a temporary sealing. However, the statutory language is clear—"[t]he affidavit is public information if executed." However, the words "public information" are not defined in the statute. Once again, we have direction from both the legislature [13] and the court of criminal appeals. In *Bingham v. State*, 915 S.W.2d 9, 10 (Tex.Crim.App.1994), the court said:

> Because "[a]ll words, phrases and terms used in th[e] Code [of Criminal Procedure] are to be taken and understood in their usual acceptation in common language, except where specially defined[,]" courts should not be involved in the business of

---

12. Nether party has provided any legislative history on this portion of article 18.01(b).

13. Tex.Code Crim. Proc. Ann. art. 3.01 (Vernon 1977)

**Art. 3.01. Words and phrases**

All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined.

Tex Govt.Code Ann. § 311.011 (Vernon 1988)

**Section 311.011. Common and Technical Usage of Words**

(a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

(b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

redefining words used in an ordinary sense by the Texas Legislature. Tex.Code Crim. Proc. art. 3.01. *See also* Tex.Penal Code § 1.05(b); Tex.Gov't Code Ann. § 311.011. Rather, when read in context, such words should be open to the broadest possible understanding to which they are reasonably susceptible in the English language. *Vernon v. State,* 841 S.W.2d 407, 409–10 (Tex.Crim.App.1992).

Under these admonitions, especially when read in context, the affidavits become "public information" when executed. Any other understanding would place a special definition on the phrase, when the legislature did not do so.

## CONSTITUTIONAL CONSIDERATIONS

As previously noted, the trial court made findings [14] that releasing the affidavits would prejudice Morrow, adversely affect Morrow's constitutional and statutory rights to a fair trial, adversely affect the close relatives of the victim, potentially adversely affect the taxpayers (in the event of a change of venue resulting from any publication of the affidavits by the Chronicle), and Morrow's constitutional and statutory rights to a fair trial were superior to any rights of the Chronicle and Article 18.01(b). In that vein, the State argued Morrow's right to a fair trial will be jeopardized by the jury pool's access to the information, which would impact any change of venue motion, and Morrow's right to a fair trial is paramount to the Chronicle's first amendment rights under the United States Constitution.

In *Eagle Printing Co.,* 671 S.W.2d at 887, the court analyzed an alleged conflict between constitutional rights and a statutory directive. The court stated:

In the instant cause we do not confront competing constitutional rights—only Applicant claims guarantees under the First Amendment and Article I, § 8, Texas Bill of Rights, and there is no accused before the Court to assert protections under the Sixth Amendment and Article I, § 10, supra, or any other provisions. In such circumstances if "interests of the press versus those of the administration of justice" are to be balanced, it occurs to us that the Legislature already struck that balance in 1965 by enacting Chapter Fifty Two....

... Without denigrating the concerns expressed by Respondent we find they do not militate against the statutory imperative laid down by Article 52.07.

■ Thus the court, when confronted with a specific legislative mandate—that courts of inquiry should be open to the public—found no need to engage in any balancing test. The similarities between *Eagle* and this case are significant: Morrow is not asserting any protections under the Sixth Amendment and Article I, § 10 or any other provisions, and there is a statutory imperative. Similarly, we find no competing constitutional rights, or other rights, to balance since the legislature has already struck that balance.[15]

## SUMMARY

■ Article 18.01(b) means what it says. Affidavits accompanying search warrants, if executed, are public information. Since the legislature declined to create an exception, we will not do so. Therefore, once the Chronicle requested the affidavits, Judge Woods had only one ministerial act—release the public information, the search warrant affidavits. Consequently, his order denying the Chronicle the search warrant affidavits and his order sealing the search warrants were in error. Therefore, we conditionally grant the writ of mandamus. We are confident Judge Woods will rescind those portions of both orders which deal with the search warrant affidavits [16] and immediately make

**14.** Although not an issue, there is no evidence in the record to support any of these findings.

**15.** We are not unmindful nor unsympathetic to the close relatives of the victim. We, as former trial judges, are also mindful of the potential financial effect a change of venue may have on county finances. However, we assume the 181 members of the Texas Legislature (not to mention the various special interest groups), were also aware of these considerations when they passed the statute. As noted above, it is not for this court to override the will of the Legislature.

**16.** Although the orders speak to both search warrant and arrest warrant affidavits, art. 18.01(b) only deals with the former. Furthermore, the thrust of the litigation dealt with the former and

them available to the Chronicle and the public in general. Only if he fails to do so will the writ issue.

WRIT CONDITIONALLY GRANTED.

no arrest warrant affidavits were submitted to this court.