**Zakee Kaleem ABDULLAH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–06–00064–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 26, 2006.

Decided Jan. 12, 2007.

Zakee Kaleem Abdullah, New Boston, pro se.

Martin E. Braddy, Hopkins County Dist. Atty., Sulphur Springs, J. Steven Bohl, TX Dept. of Crim. Justice, Asst. General Counsel, Austin, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

This is an unusual appeal. Zakee Kaleem Abdullah was convicted nearly ten years ago and was sentenced to sixty years' imprisonment and fined $10,000.00 for offenses involving controlled substances. On April 6, 2006, the Eighth

Judicial District Court of Hopkins County issued an order under statutory fiat directing payment be made from Abdullah's inmate trust fund to reimburse the county for "court costs, fees and/or fines."[1]

■ The trial court's order states that it is based on TEX. GOV'T CODE ANN. § 501.014(e) (Vernon 2004), which allows the Department, on "notification by a court," to withdraw from an inmate's trust account any amount the inmate is ordered to pay by order of the court. The statute goes on to provide a prioritized list of items for which money may be withdrawn, including child support, restitution, court fees, fines, and other "court order, judgment, or writ."

The language of the trial court's order directing withdrawal was evidently taken verbatim from the Texas Civil Practice and Remedies Code.[2] Section 14.006 allows a trial court to order an inmate who has filed a claim to pay court fees, court costs, and other costs. The record before us establishes that the trial court was not ordering payment of costs incurred in the course of a civil inmate lawsuit—the order was written to direct Abdullah to pay the court costs incurred in his conviction.[3] That order is supported only by a summary bill of costs generated by the district clerk of Hopkins County which states that the total court costs incurred in the underlying conviction was $1,517.25. However, we also note that the line in Abdullah's original judgment of conviction in which "costs" would be set out is blank.

Abdullah, acting pro se, is attempting to recover funds taken from his trust account. His briefing does not specify how error exists, save only to point out that the United States Constitution and the Texas Code of Criminal Procedure both provide that no citizen is to be deprived of property except through due course of law.[4] Abdullah ultimately asks this Court to reverse the order because it was entered without any information being provided to him beforehand, asks us to order the State to pay any costs for this appeal, and asks us to order any money removed from his trust fund returned to that account.

The State has provided a brief on behalf of the Texas Department of Criminal Justice which does not address the issues set out by Abdullah. The State correctly notes that Abdullah's conviction is long since final, that no appeal can now be taken from that conviction, and that the amounts charged against his trust account stem from that 1998 conviction—thus, the amounts are also not at issue. That is, however, questionable because the underlying judgment of conviction contains no "costs" assessment. The State correctly acknowledges that this order is similar to a

---

**1.** We style this case as *Abdullah v. State* because that is the way it was styled by the district court, which issued the order at bar. There are no pleadings, there are no notices. There is nothing except for the order, the district clerk's summary of costs, the original judgment of conviction and related attempts by Abdullah to undo the effect of the order at bar. The district clerk of Hopkins County certified that this eleven-page record is a "true and correct copy of all proceedings in [this cause number]."

**2.** Section 14.006 contains a detailed explanation of the amounts that can be withdrawn, the limitations on those amounts, and how the funds are to be maintained and ultimately sent to the trial court. TEX. CIV. PRAC. & REM CODE ANN. § 14.006 (Vernon 2002). It has no apparent linkage with the statute used in this case to justify taking the funds. *See also* TEX. GOV'T CODE ANN. § 101.061(36), (37) (Vernon Supp.2006).

**3.** It does not include the amount of the fine imposed at that time.

**4.** U.S. CONST. amend XIV; TEX.CODE CRIM. PROC. ANN. art. 1.04 (Vernon 2005).

turnover order, which is appealable.[5] The State also addresses another ground—damages—that it believed might be contained within the appeal. However, Abdullah has not sought damages, and that issue is not before us.

The issue as raised by Abdullah, in simple terms, is whether he was accorded due process of law and given proper notice before the State took his money. In simple terms, the answer is: No.

Although the section utilized by the court to define the amounts to be removed from Abdullah's account explicitly applies to inmate lawsuits, it is not fully controlling here; there is a different section of the Texas Civil Practice and Remedies Code that is directly applicable to this situation. Section 63.007 of the Texas Civil Practice and Remedies Code reads as follows:

> **Garnishment of Funds Held in Inmate Trust Fund**
>
> (a) A writ of garnishment may be issued against an inmate trust fund held under the authority of the Texas Department of Criminal Justice under Section 501.014, Government Code, to encumber money that is held for the benefit of an inmate in the fund.

TEX. CIV. PRAC. & REM.CODE ANN. § 63.007 (Vernon Supp.2006).

It is apparent from the extremely skimpy nature of these proceedings that no attempt was made to follow garnishment procedure, turnover procedure, or any other type of procedure before the trial court entered its order.[6] There are no pleadings, no proper writ of garnishment, no notifications, no warnings, and no opportunity to respond. Although a judgment of conviction typically reflects the amount of costs incurred, this one does not. When a judgment does contain that information, it would often be clear what amount of costs existed, and the Legislature has provided a means to garnish the funds available to inmates through their trust accounts so as to satisfy the state's expenses. Neither that means, nor any other procedure, was utilized in this case.

■ The Fourteenth Amendment to the United States Constitution protects against deprivation of life, liberty, or property by the State "without due process of law." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). These words "require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Thoyakulathu v. Brennan,* 192 S.W.3d 849 (Tex.App.-Texarkana 2006, no pet.).[7] The opportunity to be heard is the fundamental requirement of due process; it is an opportunity which must be granted at a meaningful time and

---

5. *Burns v. Miller, Hiersche, Martens & Hayward,* 909 S.W.2d 505 (Tex.1995) (turnover order). Further, an appeal will lie from a final judgment in a garnishment action independently of the underlying lawsuit because it is a separate proceeding. *In re Tex. Am. Express, Inc.,* 190 S.W.3d 720, 727 (Tex.App.-Dallas 2005, orig. proceeding); *Holtzman v. Holtzman,* 993 S.W.2d 729, 732 (Tex.App.-Texarkana 1999, pet. denied); *Varner v. Koons,* 888 S.W.2d 511, 513 (Tex.App.-El Paso 1994, no writ) (postjudgment writ of garnishment).

6. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 63.001 (Vernon 1997).

7. A helpful test in examining the question of whether due process was afforded employs a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process? *Copelin–Brown v. N.M. State Personnel Office,* 399 F.3d 1248, 1254 (10th Cir.2005).

in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Brewer v. Collins*, 857 S.W.2d 819, 822 (Tex.App.-Houston [1st Dist.] 1993, no writ). Requiring the government to follow appropriate procedures when its agents decide to "deprive any person of life, liberty, or property," the Due Process Clause promotes fairness in such decisions. *Daniels*, 474 U.S. at 331, 106 S.Ct. 662. The Texas Rules of Civil Procedure controlling garnishment proceedings are designed to provide such.

The order in this case is simply labeled as an "Order," which then directs the inmate trust account division of the Texas Department of Criminal Justice to withdraw money from Abdullah's trust account for payment to the district clerk of Hopkins County. The authority to withdraw money from an inmate trust account is provided by Tex. Gov't Code Ann. § 501.014(e). That subsection directs the withdrawal of funds from an inmate trust account by the Department to satisfy a variety of six different kinds of debts of graded priority, including (as priority number four) payment of court fees and costs; the last of the kinds of debts which can be satisfied under this subsection is a catchall "any other court order, judgment, or writ." By definition, a judicial proceeding in which a creditor asks a court to order a third party (the criminal justice system) to turn over funds held by it as trustee for the benefit of a third party (the inmate) to a creditor (the State) constitutes a garnishment proceeding. *See* BLACK'S LAW DICTIONARY 702 (8th ed.2004). There is nothing in the statute which would lead one to believe that the withdrawal of funds from an inmate trust account to satisfy one kind of debt (such as fines, or court fees) would necessarily require less processes than any of the other six kinds of obligations.

This is explicitly acknowledged by TEX. CIV. PRAC. & REM.CODE ANN. § 63.007, which allows a writ of garnishment to be issued against an inmate trust fund account pursuant to TEX. GOV'T CODE ANN. § 501.014 (Vernon 2004), and also reiterates that the State has sovereign immunity for any complaints raised about such an action.

■ A writ of garnishment impounds the alleged money, property, or credits of the debtor. *Beggs v. Fite*, 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937). Because this is an extraordinary remedy, the Texas Supreme Court has held that garnishment proceedings "cannot be sustained unless they are in strict conformity with statutory requirements." *Id.* The procedures to follow in any garnishment proceeding are set out in Part VI, Section 4 of the Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 657–679.

Rule 661 provides a form for the writ to be used and sent to the garnishee. Rule 663a requires service of the writ on the defendant, with specified contents explaining to the defendant how to contest the writ and regain possession of the property:

> The defendant shall be served in any manner prescribed for service of citation or as provided in Rule 21a with a copy of the writ of garnishment, the application, accompanying affidavits and orders of the court as soon as practicable following the service of the writ. There shall be prominently displayed on the face of the copy of the writ served on the defendant, in ten-point type and in a manner calculated to advise a reasonably attentive person of its contents, the following:
>
> To _____, Defendant:
>
> "You are hereby notified that certain properties alleged to be owned by you have been garnished. If you claim any rights in such property, you are advised:

"YOU HAVE A RIGHT TO REGAIN POSSESSION OF THE PROPERTY BY FILING A REPLEVY BOND. YOU HAVE A RIGHT TO SEEK TO REGAIN POSSESSION OF THE PROPERTY BY FILING WITH THE COURT A MOTION TO DISSOLVE THIS WRIT."

Tex.R. Civ. P. 663a.

In 1978, the Texas Rules of Civil Procedure relating to garnishment actions were amended primarily in response to several prejudgment seizure cases decided by the United States Supreme Court. *See Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Based on the holdings in *Sniadach* and *Fuentes*, the Texas pre–1978 prejudgment garnishment procedures were declared unconstitutional. *Southwestern Warehouse Corp. v. Wee Tote, Inc.*, 504 S.W.2d 592 (Tex.Civ.App.-Houston [14th Dist.] 1974, no writ).

When the rules governing garnishment were rewritten, they made no distinction between prejudgment and postjudgment garnishment proceedings.

There has been a question concerning whether prejudgment and postjudgment garnishment actions should be treated alike for purposes of due-process requirements, which was discussed at length (though ultimately not addressed) by the Austin court in *Hering v. Norbanco Austin I, Ltd.*, 735 S.W.2d 638, 640–42 (Tex.App.-Austin 1987, writ denied). That particular issue has not since been revisited, possibly because of the clarity of the procedural rules involved.

Regardless of the outcome of that particular discussion on due-process requirements on postjudgment garnishment as previously noted, the Texas Rules of Civil Procedure relating to garnishment were amended in 1978. Whether a debtor in a postjudgment garnishment action is entitled to actual notice of the garnishment has not been an issue under Texas law for nearly thirty years—and Abdullah's complaint here is precisely that lack of notice. Rule 663a is unambiguous in its requirement that the debtor be given notice of the garnishment and of his rights to regain his property, and about the specific information that must be provided so that the writ may be contested. The rule makes no distinction between prejudgment and postjudgment notice to the debtor. *Id.* at 640–41.

■■ If a judgment-creditor intends to avail himself of the State's aid in effecting a deprivation of property, he must strictly comply with the pertinent rules. *See Beggs*, 106 S.W.2d 1039; *Hering*, 735 S.W.2d at 640–41. This was not done in this case, and the failure is fatal to its judgment in the garnishment action. When the creditor fails to give the defendant notice of the writ of garnishment as required by the rules, a trial court errs by granting the writ. *Mendoza v. Luke Fruia Invs., Inc.*, 962 S.W.2d 650, 652 (Tex.App.-Corpus Christi 1998, no writ).

■ The order removed money from Abdullah's trust account. A prison inmate has a property interest in his inmate trust account. *Covarrubias v. Tex. Dep't of Criminal Justice–Institutional Div.*, 52 S.W.3d 318, 324 (Tex.App.-Corpus Christi 2001, no pet.); *Brewer v. Collins*, 857 S.W.2d 819, 823 (Tex.App.-Houston [1st Dist.] 1993, no pet.). Thus, a property interest is involved. Abdullah was not accorded the procedural due process to which he was entitled.

We reverse the order issued by the trial court.