NO. 07-06-0489-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO





JULY 23, 2007


 ______________________________



JACOB GROSS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY;



NO. 4137; HONORABLE WILLIAM P. SMITH, JUDGE


_______________________________




BEFORE THE COURT EN BANC

OPINION


 Appellant, Jacob Gross, seeks to appeal an order recouping court appointed
attorney fees and court costs from appellant's inmate trust fund account. We find that the
order being appealed is a non-appealable order and dismiss for want of jurisdiction.

Background 


 Appellant was found guilty of aggravated assault by a jury and sentenced to thirty
five years (35) in the Institutional Division of the Texas Department of Criminal Justice
(Department). On October 16, 2003, the trial court signed the written judgment placing
appellant into custody to serve his sentence; also contained in the judgment, appellant was
ordered to pay $298 in court costs and $1,960 in court appointed attorney fees. 

 On November 8, 2006, the trial court signed its withdrawal order notifying the
Department that appellant had been assessed court costs and attorney fees totalling
$2,258 in this cause and ordering the Department to withdraw money from the trust
account of appellant in accordance with section 501.014 of the Texas Government Code.

 On December 21, 2006, appellant filed a notice of appeal accompanied by a motion
for extension of time to file notice of appeal. (1) Appellant further notified the court that he
was proceeding pro se and filed his brief on March 5, 2007. The State did not file an
appellee's brief. Appellant appeals from the order to the Department withdrawing money
from his inmate trust account contending that the order which was issued without notice
violates state law and due process.

Jurisdiction
 

 Because of different concerns raised by civil and criminal appeals, we must first
determine the nature of the case. See Crawford v. State, No. 10-06-00269-CR, 2007 WL
1374500, at *1 (Tex.App.-Waco May 9, 2007, no pet. h.) (Gray, C.J. dissenting). The
nature of the order withdrawing money from an inmate trust account has recently been
addressed by two other courts of appeals. See Crawford, 2007 WL 1374500; Abdullah v.
State, 211 S.W.3d 938 (Tex.App.-Texarkana 2007, no pet.). The trial court's order
seeking recoupment of court appointed attorney fees and court costs is authorized by
section 501.014(e) of the Texas Government Code. See Tex. Gov't Code Ann. §
501.014(e) (Vernon 2004). In Abdullah, the appellate court classified the order as a
garnishment order and proceeded to place a burden on the trial court to abide by statutory
requirements for garnishment orders. See Abdullah, 211 S.W.3d at 941. The section
under which the order was issued does not reference such requirements. (2) By doing so,
our sister court is making the determination that the case is civil in nature; we respectfully
disagree with our sister court's determination.

 A nonindigent defendant is required to pay for counsel. To require an indigent to
reimburse the county, to the extent he is able, for the expense of furnished counsel tends
to put indigents and nonindigents on the same basis and is consistent with due process. 
See Curry v. Wilson, 853 S.W.2d 40, 45-46 (Tex.Crim.App. 1993). The State of Texas
provides an important service in providing legal services to those indigent citizens who
cannot afford to pay for their own defense. Id. at 46. Because of this service provided to
indigents, the State has a significant interest in assuring that persons with financial
resources pay for their own representation and do not take a free ride at the expense of
its taxpayers. See id. Thus, it is not an inherent violation of due process for the State to
take reasonable steps to collect on expenditures made on behalf of those who have the
ability to off-set the State expenses. Id. Unlike the situation in Abdullah, appellant was
assessed court costs and attorney fees at the conclusion of trial. The reimbursement of
the expenses incurred by the taxpayers were incorporated into the judgment which was
signed by the trial court on October 16, 2003. By virtue of the inclusion of these fees in the
judgment, appellant had notice that he would be required to pay court costs and attorney
fees. Hence, we conclude that the issue of recoupment of attorney fees is closely related
to the criminal case. See Tex. Code Crim. Proc. Ann. art. 26.05(g) (Vernon Supp. 2006);
Curry, 853 S.W.2d 40, 43 (Tex.Crim.App. 1993) (dispute over a district judge's authority
to enforce order recouping attorney fees is a criminal law matter). Therefore, to determine
if this court has jurisdiction, we look to our authority in criminal matters to determine how
we have jurisdiction to review the trial court's order withdrawing funds from appellant's
inmate trust account.

 A threshold question in any case is whether the court has jurisdiction over the
pending controversy. See State v. Roberts, 940 S.W.2d 655, 657 (Tex.Crim.App. 1996)
overruled on other grounds by State v. Medrano, 67 S.W.3d 892 (Tex.Crim.App. 2002). 
Jurisdiction is the power of the court over the subject matter of the case, conveyed by
statute or constitutional provision. See id. The right to appeal is conferred by the
legislature, and a party may appeal only that which the legislature has authorized. See
Galitz v. State, 617 S.W.2d 949, 951 (Tex.Crim.App. 1981). A court has jurisdiction to
determine whether it has jurisdiction. Roberts, 940 S.W.2d at 657; Olivo v. State, 918
S.W.2d 519, 523 (Tex.Crim.App. 1996). Courts will address the question of jurisdiction
sua sponte. Roberts, 940 S.W.2d at 657. For, unless a court has jurisdiction over a
matter, its actions in the matter are without validity. Roberts, 940 S.W.2d at 657 n.2. 

 In a criminal case, appeal is perfected by timely filing a notice of appeal. Tex. R.
App. P. 25.2(a). An untimely notice of appeal fails to invoke the jurisdiction of the appellate
court. See Olivo, 918 S.W.2d at 523. The appellate court then has no jurisdiction over the
appeal and must dismiss the matter. Id. To appeal a criminal matter, the notice of appeal
must be filed within 30 days after the trial court enters an appealable order. Tex. R. App.
P. 26.2. The only appealable order in this case is the 2003 judgment that included the
assessment of the court costs. (3) Since appellant's notice of appeal is more than 30 days
after the date of the judgment, we conclude that the notice is untimely. We have not found
authority allowing us to review a withdrawal order issued under section 501.014(e) of the
Texas Government Code.

 Therefore, we conclude that we must dismiss the appeal for want of jurisdiction. 


 Mackey K. Hancock

Justice

Publish.
1. For purposes of this opinion, we grant appellant's motion for extension of time to
file notice of appeal and we find that said notice of appeal would have been timely if the
withdrawal order were an appealable order.
2. In interpreting statutes, our focus is on the literal text of the statute in an effort to
discern the fair objective meaning. See Hernandez v. State, 861 S.W.2d 908, 909
(Tex.Crim.App. 1993). "[T]he Legislature is constitutionally entitled to expect that the
Judiciary will faithfully follow the specific text that was adopted." Id. (quoting Boykin v.
State, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). If the Legislature had wanted
additional safeguards and procedures in the process of recouping court costs and fees,
they could have done so. Compare Tex. Gov't Code Ann. §§ 500.002 (Vernon 2004)
(requiring Department to establish procedures protecting due process rights of inmate
against withdrawal of funds from inmate trust account for property damage) and 501.063
( requiring Department to establish procedures informing inmate that medical copay will be
deducted from inmate trust account) with 501.014.
3. The appellate court in Abudullah questioned the finality of the assessment of costs
within the judgment because the judgment did not contain an assessment of court costs
though the trial court later issued an order seeking $1,517.25 from the inmate's trust
account as reimbursement. See Abdullah, 211 S.W.3d at 940. In the case before us, the
judgment does in fact contain an assessment of court costs and attorney fees equal to the
amount sought by the order withdrawing funds from appellant's inmate trust account.



for purposes of this opinion, we will assume, without deciding, that Shenandoah and
Mason Brothers owed Rocker A duties measured by the API Recommended Practices,
which included the duties to install anchors in accordance with the specified criteria, provide
anchor capacity verification, replace anchors that are damaged, excessively deteriorated
or fail capacity verification, maintain records concerning capacity verification at the well site
and place visible markers on each anchor. We will assume also for this purpose Essex is
correct that appellees owed Rocker A a duty to train the persons who installed and
maintained the anchors. Assuming the existence of those duties, and further even
assuming the breach of those duties both by Shenandoah and Mason Brothers, the
summary judgment must nonetheless be affirmed because there is no summary judgment
evidence that Shenandoah's or Mason Brothers' breach of any such duty proximately
caused the damage to Rocker A's rig. 

 Proximate cause as an element of negligence consists of two components, cause
in fact and foreseeability. Doe, 907 S.W.2d at 477. The cause in fact component asks
whether the negligent act or omission was a substantial factor in bringing about the injury,
without which the harm would not have occurred. Id.; McClure v. Allied Stores of Tex.,
Inc., 608 S.W.2d 901, 903 (Tex. 1980). Although they may be proven by circumstantial
evidence, the elements of proximate cause cannot be established by mere conjecture,
guess or speculation. Doe, 907 S.W.2d at 477; see Excel Corp. v. Apodaca, 81 S.W.3d
817, 820 (Tex. 2002); Farley v. M M Cattle Co., 529 S.W.2d 751, 755 (Tex. 1975). The
summary judgment evidence contains nothing from which reasonable minds could draw
an inference that Rocker A's rig would not have fallen and been damaged if Shenandoah
or Mason Brothers had performed all the duties Essex claims the law assigned them.

 Essex emphasizes the evidence that Shenandoah replaced the two dislodged
anchors at the accident well site and several anchors at other wells, substituting screw-type
anchors for the T-shaped anchors previously used. The record contains no testimony or
other evidence, though, that Rocker A's rig would not have fallen over if screw-type anchors
had been installed rather than T-shaped anchors, or that screw-type anchors would not
have been pulled from the ground. Essex also emphasizes that there is a fact issue
whether the anchors were tested when Mason Brothers first installed them. But no witness
said the T-shaped anchors would not have moved or been pulled from the ground if they
had been better installed or maintained. There is no evidence that differently designed,
installed, tested or maintained anchors would have withstood the force of the wind on that
particular occasion. There is no evidence concerning the velocity, nature or duration of the
wind that blew the rig over (4) or concerning the force exerted on the anchors by the wind. 
Nor is there evidence concerning the anchor capacity that would have been required to
withstand the wind. No one testified the rig blew over because the anchors lacked the
necessary capacity, or because their capacity was not properly verified, or because
appellees did not conduct proper tests, keep proper records, install proper tags or properly
train personnel. 

 Gary Parrish's affidavit does not provide the absent evidence of proximate cause. 
The affidavit states no facts concerning appellees' acts or omissions, but states that
Parrish's conclusions were based on unspecified information contained in the depositions
of Shenandoah and Mason Brothers personnel. Parrish's conclusory statement that "it
appears" the damage to Rocker A's rig "was proximately caused" by the failure of the
anchors is not evidence of that fact. See Texas Division-Tranter, Inc. v. Carrozza, 876
S.W.2d 312, 314 (Tex. 1994) (per curiam) (conclusory statements not competent summary
judgment evidence). Further, even if Parrish's statement is accepted as true, it does not
provide evidence that any breach of duty by Shenandoah or Mason Brothers proximately
caused the failure of the anchors. 

 The cause in fact component of proximate cause sometimes is referred to as "but
for" causation. See Marathon Corp. v. Pitzner, 106 S.W.3d 724 (Tex. 2003) (per curiam). 
Missing entirely from this record is evidence that Rocker A's rig would not have fallen "but
for" an act or omission of Shenandoah or Mason Brothers. Essex's second and fourth
issues are overruled. The trial court's judgment is affirmed.


 James T. Campbell

 Justice




1. Commonly called a "deadman."
2. Essex cited and quoted American Petroleum Institute Recommended Practice 4G,
Recommended Practice for Maintenance and Use of Drill and Well Servicing Structures
(First Edition, January 1, 1992, and Second Edition, October, 1998).
3. See Bland Ind. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000) (court "must not
act" without determining it has subject matter jurisdiction); Vega v. Davila, 31 S.W.3d 376,
378 (Tex.App.-Corpus Christi 2000, no pet.).
4. Indeed, the evidence is only circumstantial that the wind caused the rig's fall. No
one questions that fact, though, and the presence of storms in the area and ground wet
from rain the next morning provide additional circumstantial evidence.