In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00094-CV


______________________________





IN RE:


CHARLES EDWARD DOYLE








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Unhappy to have $106.66 withdrawn from his inmate trust account, Charles Edward Doyle
asks this Court to order the Honorable Scott McDowell to withdraw an order permitting the Texas
Department of Criminal Justice-Institutional Division (hereinafter the Department) to garnish
Doyle's inmate trust account. Contrary to Doyle's contention, we conclude that the record before us
shows the trial court's order does not violate Doyle's due-process rights, that he had fair notice of the
State's intent to garnish his inmate trust account before he pled guilty under a negotiated plea
agreement in the underlying case, and that he affirmatively waived his right--"in any manner"--to
challenge such garnishment as a part of that underlying plea agreement. Accordingly, we deny
Doyle's petition for writ of mandamus.

 The record before us shows Judge McDowell issued an order permitting the Department to
garnish Doyle's inmate trust account. Doyle contends in his writ petition that about $106.66 has been
deducted from his inmate trust account since the trial court issued this order. Doyle contends the
trial court issued its garnishment order without first providing notice to Doyle and without also
providing him an opportunity to be heard on the issue of garnishment. 

 At our request, the State filed a response to Doyle's petition. Included in that response is a
copy of the written plea admonishments given to Doyle at the time of his February 11, 2008, guilty
plea in the underlying felony case. Section eighteen of those written admonishments provides,

Upon court order, the Texas Department of Criminal Justice (hereinafter "the
Department") may withdraw, seize or garnish funds from an inmate's trust account
to pay court fees, costs and fines associated with this conviction. As part of this plea
agreement you:


1. Agree not to object to, challenge, protest, or otherwise contest, in any manner, the
withdrawal, seizure or garnishment of funds from your inmate trust account by the
Department for the payment of court fees, costs, and fines associated with this
conviction.

2. Waive the right to object to, challenge, protest or otherwise contest, in any
manner, the calculation of the amount of court fees, costs and fines associated
with this conviction to be withdrawn, garnished or seized by the Department from
your inmate trust account.

3. Waive the right to be served with legal process or notice of any kind (including
any writ of garnishment, application, accompanying affidavit(s), bill(s) of costs
or court order) in any way pertaining or related to the withdrawal, garnishment or
seizure of funds from your inmate trust account by the Department for the
payment of court fees, costs, and fines associated with this conviction.

4. Waive any legal, equitable or administrative process or procedure (including by
inmate grievance or other internal Department method) to regain funds, or to
prevent withdrawal, garnishment or seizure of funds, from your inmate trust
account by the Department for the payment of court fees, costs and fines
associated with this conviction.

5. Waive, forego, surrender and relinquish any property right to any funds
withdrawn, garnished or seized from your inmate trust account by the Department
to pay court fees, costs and fines associated with this conviction.

6. Waive the right to the appointment of legal counsel to pursue any legal, equitable
or administrative proceeding to prevent the Department from withdrawing,
garnishing or seizing funds from your inmate trust account to pay an unpaid fine,
court costs or court fees to regain the same.


Both Doyle and the presiding judge signed the document immediately below--and on the same
page--as these paragraphs. Immediately preceding Doyle's signature appears an additional
sentence: "I understand each and every admonishment and I have no questions of the judge or my
attorney concerning these admonishments." 

 Our law permits the Department to garnish an inmate's trust account when such has been
authorized by the trial court of conviction and is pursuant to an order by the court to pay items
included in a prioritized statutory list. Tex. Civ. Prac. & Rem. Code Ann. § 63.007 (Vernon 2008);
Tex. Gov't Code Ann. § 501.014(e) (Vernon 2004). Before a trial court may issue an order
pursuant to Section 501.014 of the Texas Government Code, the convicted inmate must be provided
both with notice of the State's intent to garnish that trust account and with an opportunity to respond. 
Abdullah v. State, 211 S.W.3d 938, 941-42 (Tex. App.--Texarkana 2007, no pet.). Generally, the
State's failure to provide a convicted inmate with such advance notice and opportunity to respond
violates the inmate's right to due process. Id. at 942; see also Daniels v. Williams, 474 U.S. 327, 331
(1986) ("By requiring the government to follow appropriate procedures when its agents decided to
'deprive any person of life, liberty, or property,' the Due Process Clause promotes fairness in such
decisions."); Hurtado v. California, 110 U.S. 516 (1884) (Due Process Clause "intended to secure
the individual from the arbitrary exercise of the powers of government"). A defendant, however,
may also affirmatively, voluntarily, and knowingly waive any rights afforded to him or her--even
constitutional due-process rights. Wheeler v. State, 628 S.W.2d 800, 802 (Tex. Crim. App. 1982);
Franks v. State, 513 S.W.2d 584, 585 (Tex. Crim. App. 1974). The record before us shows Doyle
affirmatively, intelligently, voluntarily, and knowingly waived his right to contest any future
garnishment proceeding to collect fees, costs, and fines connected with his underlying criminal
conviction. While Doyle now claims his waiver regarding garnishment was involuntary, the record
before us refutes such a claim. 

 We conclude Doyle's voluntary waiver of his due-process right to notice and opportunity to
contest the garnishment proceeding precludes this Court from granting the requested relief. Cf.
Moore v. State, 240 S.W.3d 248, 250 (Tex. Crim. App. 2007) (discussing other plea agreement
provisions that have been included and requiring such contract be binding as to all aspects of
agreement absent evidence agreement was made unknowingly or involuntarily). We deny the
petition for writ of mandamus.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 23, 2008

Date Decided: September 24, 2008



or does it provide the data necessary to arrive at this determination. 
From parol, we know Mayor owned 5.082 total acres on Frudge Road. But nowhere in the
description is 5.082 acres specified. Rather, the only possible reference in the description
to acreage is the term "4.9500 AC." This reference, however, is inconsistent with Mayor's
total acreage on Frudge Road. Further, it is not clear whether the term "4.9500 AC" even
refers to acreage at all. In addition, nowhere in the Mayor-Garcia contract is there an
indication that Mayor intended to sell all of her property on Frudge Road. Without more,
we cannot know the amount of land contracted to be sold. 

What remains in the description are terms that, by themselves, provide only a basis
of inference or language that can only be expanded by parol. 

In Texas, the use of parol evidence to determine a property description is limited. 
The Texas Supreme Court in Pick, 659 S.W.2d at 637 (quoting Wilson, 188 S.W.2d at
152), reiterated this limitation: 

The certainty of the contract may be aided by parol only with certain
limitations. The essential elements may never be supplied by parol. The
details which merely explain or clarify the essential terms appearing in the
instrument may ordinarily be shown by parol. But the parol must not
constitute the framework or skeleton of the agreement. That must be
contained in the writing. Thus, resort to extrinsic evidence, where proper at
all, is not for the purpose of supplying the location or description of the land,
but only for the purpose of identifying it with reasonable certainty from the
data in the memorandum.

In the Mayor-Garcia property description, the essential elements of location and
amount of property to be sold are either left to inference or to be supplied by parol. Thus,
in looking at the property description, we conclude the description itself is insufficient as
a matter of law.

But this does not end our inquiry. The next step is to determine whether the
contract sufficiently references another writing supplying the missing terms. If it does, the
referenced writing must have been in existence at the time the parties signed the contract.
See Jones, 614 S.W.2d at 99.

Garcia testified he obtained the "shorthand" description of the property from an
HCAD report. But the description in the Mayor-Garcia contract provides no reference to
the HCAD report. Moreover, even if the contract specifically referenced the HCAD report,
the report itself fails to provide a sufficient description. (2) Therefore, under step two of our
inquiry, there is no referenced document providing the missing essential terms.

Garcia also asks us to apply the "nucleus of description" theory. This theory,
outlined in Gates v. Asher, 154 Tex. 538, 280 S.W.2d 247, 248-49 (1955), provides that,
if enough information appears in the description so that a party familiar with the locality can
identify the property with reasonable certainty, then the property description will be
sufficient. 

To support the proposition that the Mayor-Garcia property description contained a
"nucleus of description," Garcia points to Stewart Title's ease in locating the property with
only the information contained in the property description. (3)

The "nucleus of description" theory applied in Gates, however, is distinguishable
from the present case. In Gates, the court of appeals concluded the property description
failed because it contained a reference to a nonexisting survey-"Denver Resurvey No. 2." 
See id. at 249. The Texas Supreme Court, however, read all the terms of the Gates
property description together and determined that "Denver Resurvey No. 2" actually
referred to an existing survey-"Denver Resurvey" and the No. 2 referred to a block number
within the "Denver Resurvey." The court merely construed existing terms within the
description liberally to provide meaning to all the terms of the description. See id. In our
case, however, no terms within the description provide a "nucleus of description" for either
an amount of acreage to be sold or Mayor's intention to sell all of her property, or the
county and city of the property. We conclude, therefore, that the Mayor-Garcia contract
does not contain a sufficient "nucleus of description."

In addition, Garcia contends the reference to "Frudge Road" in the description was
enough to describe the land with reasonable certainty because Mayor only owned one tract
of land on Frudge Road. In support of his contention, Garcia points to the Texas Supreme
Court's holding in Kmiec v. Reagan, 556 S.W.2d 567, 569 (Tex. 1977). In Kmiec, the court
held, "When the grantor is stated to be the owner of the property to be conveyed and it is
proved that the grantor owns only a single tract answering the description, the land is
identified with reasonable certainty." Id. 

Kmiec, however, is also distinguishable from the present case. Kmiec involved an
option contract to buy three separate tracts of land-150 acres of tract #1 and two tracts of
168.25 acres each. The defect in the Kmiec-Reagan option was an uncertainty about the
shape of two of the tracts, not the total acreage of the property. Reagan, the seller, only
owned the three tracts of land specified in the option. Id. In addition, the property
description within the option contract contained a specific reference to the acreage to be
sold-one tract containing 150 acres and two tracts containing 168.25 acres each. Id. The
court found that, because Reagan only owned these tracts, the tracts were sufficiently
described. But the present case is different. As stated above, the Mayor-Garcia contract
provides no acreage, or at minimum, acreage inconsistent with the total acreage owned
by Mayor, but no indication that Mayor intended to sell all of her property on Frudge Road. 
In the Mayor-Garcia property description, a determination of this essential element-the
amount of property to be sold-can only be supplied by either inference or parol. This
approach does not meet the test of reasonable certainty. See Morrow, 477 S.W.2d at 541.
 We recognize that the record leaves little doubt Garcia and Mayor knew and
understood what property was intended to be conveyed. Moreover, Stewart Title, by a
search of abstract records and by using the information in the Mayor-Garcia property
description, was able to locate the property and make a plat. But knowledge and intent of
the parties will not give validity to the contract, id. at 540; neither will a plat made from
extrinsic evidence. Id. 

The essential elements of a property description may never be supplied by parol. 
Id. at 541. In the Mayor-Garcia contract, the essential elements of the description are
either left to inference or to be supplied by parol. Such a description is palpably insufficient
to support a suit either for specific performance or for damages. See Wilson, 188 S.W.2d
at 154.

Mayor's first point of error is sustained, and the trial court's holding is reversed and
rendered in favor of Mayor.

Because Mayor's appeal is reversed and rendered on her first point of error, voiding
the Mayor-Garcia contract under the statute of frauds, we need not address the issues of
fraud and "unclean hands." The only outstanding issue on appeal, therefore, is whether
Mayor is entitled to attorney's fees. Consistent with the Mayor-Garcia contract and a jury's
finding on this issue, we conclude Mayor is entitled to attorney's fees. 

The Mayor-Garcia contract contained the following provision: 

ATTORNEY'S FEES: The prevailing party in any legal proceeding brought
under or with respect to the transaction described in this contract is entitled
to recover from the non-prevailing party all costs of such proceeding and
reasonable attorney's fees. 


 The jury found that a reasonable attorney's fee for Mayor is $12,000.00, and for
appeal, $5,000.00. Because we render judgment in favor of Mayor, she is entitled to
$17,000.00 in attorney's fees.

 For the reasons stated, the judgment granting specific performance and attorney's
fees in favor of Garcia and against Mayor is reversed and rendered, and judgment is
hereby granted in favor of Mayor against Garcia for attorney's fees in the total amount of
$17,000.00.



 Donald R. Ross

 Justice


Date Submitted: February 21, 2003

Date Decided: March 10, 2003

1. 
[1]Other cases similarly holding include: Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150, 152
(1945); Osborne v. Moore, 112 Tex. 361, 247 S.W. 498, 500 (1923); Coker v. Roberts, 71
Tex. 597, 9 S.W. 665, 667 (1888); Jones v. Carver, 59 Tex. 293, 294 (1883); Yenda v.
Wheeler, 9 Tex. 408 (1853); Wiseman v. Zorn, 309 S.W.2d 253, 260 (Tex. Civ. App.-
Houston 1958, no writ); Cf. Garner v. Redeaux, 678 S.W.2d 124, 127 (Tex. App.-Houston
[14th Dist.] 1984, writ ref'd n.r.e.).

2. 
[2]The HCAD report contains no more information than the Mayor-Garcia property
description.
3. 
[3]It is not clear from the record whether Stewart Title used other documents to locate the
property.