

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00112-CR

---

RASHAD LEE, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 76th District Court
Morris County, Texas
Trial Court No. 10,947CR

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

While working as a confidential informant for the Texas Department of Public Safety (TDPS), Charles Taylor purchased crack cocaine from Appellant, Rashad Lee. After completing the transaction, Lee was arrested and charged with delivery of a controlled substance. At his trial, the jury found Lee guilty and sentenced him to serve forty years in the Correctional Institutions Division of the Texas Department of Criminal Justice. The jury also imposed a $5,000.00 fine. The trial court imposed sentence in open court and remanded Lee to custody. The next day, the trial court signed the judgment of conviction and an order requiring the withdrawal of funds from Lee's inmate account for payment of the fine and court costs.

In his first point of error, Lee argues that the State's evidence fails to adequately corroborate the confidential informant's testimony because it does not tend to connect him to the commission of the crime as required by Article 38.141 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005). In his second point of error, Lee argues that the State denied him due process by ordering the withdrawal of funds from his inmate account without notice or a hearing. Because we find the corroborating evidence satisfied Article 38.141's requirements, we overrule Lee's first point of error. Because Lee failed to properly present his second point of error, we overrule that point as well.

## I. First Point of Error: Insufficient Corroborating Evidence

### A. Applicable Facts

Taylor telephoned Lee and set up a meeting to purchase one-quarter of an ounce of crack cocaine for $225.00 Lee told Taylor to meet him at a particular location near a cemetery. He also

2

told Taylor he would be walking a dog and would meet him there. TDPS Investigating Agent Chad Brock and three other officers listened to the call as it occurred. Brock and the other officers accompanied Taylor to the prearranged location.

Before arriving at the location, Agent Brock searched Taylor to verify that he had no drugs or money, and he did not. Brock provided Taylor with a key fob containing a video camera so that he could record the transaction. He also gave him $225.00 in cash to purchase the cocaine. Brock and the other officers followed Taylor at a distance so that they could provide assistance to Taylor if something went wrong during the transaction. They saw Taylor meet a man walking his dog and watched them walking together. When he reconnected with the officers, Taylor produced a baggie, which was later determined to contain approximately 2.56 grams of cocaine. He did not have in his possession any of the money given to him by Brock.

B.      Standard of Review

In a case such as this, any testimony from a confidential informant must be corroborated by other evidence tending to connect the defendant with the alleged offense. TEX. CODE CRIM. PROC. ANN. art. 38.141. We review confidential informant corroboration in the same manner and by the same measure as we would review the testimony from an accomplice witness. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

To adequately corroborate Taylor's testimony,

> "[a]ll the law requires is that there be some [other] evidence which tends to connect the accused to the commission of the offense. While individually these circumstances might not be sufficient to corroborate the [confidential informant] testimony, taken together, rational jurors could conclude that this evidence sufficiently tended to connect appellant to the offense."

3

*Cantelon v. State*, 85 S.W.3d 457, 460–61 (Tex. App.—Austin 2002, no pet.) (quoting *Hernandez v. State*, 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997)). "To determine the sufficiency of the corroboration, we eliminate the testimony of the [confidential informant] and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense, even if it does not directly link the accused to the crime." *Id.* at 461 (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). We must view the corroborating evidence in the light most favorable to the verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (reviewing sufficiency of accomplice witness testimony); *Ivery v. State*, No. 06-13-00250-CR, 2014 WL 3906192, at *1 (Tex. App.—Texarkana Aug. 12, 2014, no pet.) (mem. op., not designated for publication).

**C.     Analysis**

The record reveals several items of evidence that would tend to connect Lee to the offense, even if Taylor's testimony were eliminated. First, Taylor placed a telephone call to Lee to arrange the transaction. Lee told Taylor where to meet him and that he would be walking a dog. Brock and the other officers listened to that telephone conversation and testified as to its contents. Brock also testified that when they arrived at the agreed upon location, he saw two men walking down the road, one of whom had a dog on a leash. Although Brock was not asked if he was able to identify the men, the general description was consistent with the information revealed in Taylor's telephone conversation with Lee.

The State also introduced an audio/video recording and still image screen captures from that recording, introduced as photographs, to corroborate Taylor's testimony. The audio/video recording depicts a person identified as Lee walking with another person who was walking a dog

4

and records these individuals' encounter with Taylor. The recording itself shows them meeting and talking; it also shows their movements, including contact between their hands. The still image screen captures consist of three relevant photographs. In those images, it appears that Lee has something in his hand that could be a plastic baggie. The images also show that Lee's hand was empty after his contact with Taylor.

Finally, Lee arranged to sell Taylor one-quarter of an ounce of cocaine for $225.00. Taylor was searched immediately prior to his encounter with Lee, and he had no money or illegal drugs in his possession. After giving Taylor $225.00, Agent Brock released him to meet Lee; upon returning, Taylor was again searched and was found to possess a baggie of what was later identified as 2.56 grams of cocaine. Taylor did not have the $225.00 upon the second search. Accordingly, we conclude that the evidence is sufficient to tend to connect Lee to the commission of the offense as required by Article 38.141. The evidence is therefore sufficient to support the jury verdict, and Lee's first point of error is overruled.

## II. We Do Not Have Jurisdiction Over Lee's Claims Related to the Notice of Withdrawal of Funds from His Inmate Account

### A. Lee's Due Process Argument

Lee argues that the order directing the collection of a fine and court costs from his inmate account was entered in a manner that violated his right to due process of law. In the summary of his argument, Lee recites the following procedural facts:

> The trial judge signed a judgment of conviction by a jury on June 18, 2014. The court clerk prepared and filed a bill of costs on June 18, 2014. The court clerk notified appellant [sic] counsel of his appointment by mail dated June 19, 2014. Thereafter[,] the court clerk filed an order to withdraw funds and dated June 19,

5

2014[,] but filed on June 20, 2014. The basis for the order is shown to be Government Code §501.014[(e)].

In his argument proper, Lee contends, "The order at bar, as well as the appellate record, show no evidence of prior notice to Rashad Lee, his trial counsel or his appellate counsel that any monetary assessment was sought or even at issue in a case where he had been represented by appointed counsel from the beginning." The complained-of order attached as Appendix A to his Brief is entitled "Order to Withdraw Funds" and reflects that "THE COURT ENTERS THIS ORDER pursuant to **Government Code, Section 501.014**, on this 19th day of June, 2014."

**B.      We Cannot Address Lee's Argument in this Direct Appeal from Lee's Criminal Conviction**

The Texas Court of Criminal Appeals has held that when an appellant challenges the basis for assessment of court costs authorized by criminal statutes on direct appeal of his or her criminal conviction, the cost challenge claim "arises over the enforcement of statutes governed by the Texas Code of Criminal Procedure, thereby making it a criminal matter." *Armstrong v. State*, 340 S.W.3d 759, 766 (Tex. Crim. App. 2011); *see Johnson v. State*, 423 S.W.3d 385, 388 (Tex. Crim. App. 2014) (holding that cost challenge to assessment of costs mandated by criminal statutes may be raised for first time on appeal, and that, if necessary, record can be supplemented with cost bill even if cost bill is created after fact). Likewise, in *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010), the Texas Court of Criminal Appeals held that an appellant may challenge the sufficiency of the evidence supporting a trial court's assessment of court-appointed attorney fees on direct appeal of the criminal conviction without raising the issue in the trial court first.

6

Here, Lee's argument fails to raise either a challenge to the basis of the court costs assessed or a complaint about the evidentiary sufficiency of the assessment of court costs or attorney fees. Instead, Lee challenges the collection of the costs by questioning whether the trial court's notice of withdrawal violated due process requirements. Lee supports his argument by citing to three cases; however, all three of these cases suggest that Lee's point of error cannot be raised in this direct appeal. The first case cited by Lee is a civil appeal in which this Court decided that a due process complaint related to the collection of costs is a civil matter. *See generally Abdullah v. State*, 211 S.W.3d 938 (Tex. App.—Texarkana 2007, no pet.). In the second case Lee cites, the Texas Court of Criminal Appeals found that it lacked jurisdiction to address a complaint similar to the one Lee raises here because the complaint did not involve "criminal law matters." *Johnson v. Tenth Judicial Dist. Court of Appeals at Waco*, 280 S.W.3d 866, 874 (Tex. Crim. App. 2008) (orig. proceeding). Finally, the last case cited by Lee merely clarified that a defendant must challenge the sufficiency of the evidence supporting an assessment of court costs in a deferred-adjudication order by a timely-filed direct appeal of that order deferring adjudication and assessing the contested costs. *Perez v. State*, 424 S.W.3d 81, 86 (Tex. Crim. App. 2014). *Perez* further clarified that it is too late to challenge such costs in an appeal of a subsequent order of adjudication. *Id.* Again, because Lee is not challenging the sufficiency of the evidence supporting the assessed court costs, *Perez* is inapplicable.

The line of cases discussing cost challenges raised for the first time on appeal of criminal convictions beginning with *Armstrong* and leading to *Perez* dealt exclusively with challenges to the assessment of court costs under the Texas Code of Criminal Procedure, not the collection of

7

costs under the Texas Government Code.  Lee does not complain that the legal or factual bases for the costs were insufficient, but rather that the manner in which those costs were collected in this case deprived him of due process.

Lee's appellate argument directly invokes the Texas Government Code.  The Texas Supreme Court and the Texas Court of Criminal Appeals have both held that challenges to the manner or means of collecting court costs under Section 501.014(e) of the Texas Government Code are civil matters.  *See Johnson*, 280 S.W.3d at 866; *Harrell v. State*, 286 S.W.3d 315 (Tex. 2009).  In a concurring opinion in *Perez*, Judge Alcalá made this point clear:  "Proceedings under Government Code section 501.014(e) to recover court fees and costs assessed against inmates are civil in nature and are not part of the underlying criminal case."  *Perez*, 424 S.W.3d at 89 (Alcalá, J., concurring).  Nothing in *Perez* or the line of cases leading up to it would authorize an appellant to raise an issue concerning the collection of costs under Section 501.014(e) of the Texas Government Code in a direct appeal of a criminal conviction.[1]  Accordingly, we do not have jurisdiction to address Lee's complaint in this appeal.

Moreover, because (1) the notice of withdrawal is not a final, appealable order, and (2) Lee failed to raise his civil issue with the trial court, this Court would not have civil jurisdiction to address the merit of Lee's complaint, even if properly before us.  Notwithstanding the fact that the document Lee is challenging is entitled "Order to Withdraw Funds," previous cases make it clear that this is a notice, not an order.  *See Goodspeed v. State*, 352 S.W.3d 714, 715 (Tex. App.—

---

[1]Further, in *Armstrong*, the Texas Court of Criminal Appeals specifically noted that "Appellant does not contest any withdrawal order issued by the trial court pursuant to the Texas Government Code *or any other collection effort*. Instead, Appellant contests *the assessment of the costs* and the sufficiency of the evidence to support the attorney fees mandated by the bill of costs." *Armstrong*, 340 S.W.3d at 766 (emphasis added).

Texarkana 2011, pet. denied) (citing *Harrell*, 286 S.W.3d at 316 n.1).[2]  In order to secure a final, appealable order on the matter, a defendant must first raise any issue regarding the collection of costs with the trial court.  *Id.* (citing *Jewell v. State*, No. 06-10-00114-CV, 2011 WL 1642769, at *1 (Tex. App.—Texarkana Apr. 29, 2011, no pet.) (mem. op.) ("'The trial court's ruling on the inmate's contest [to a withdrawal notification] is what can be appealed.'")); *see Williams v. State*, 332 S.W.3d 694, 698 (Tex. App.—Amarillo 2011, pet. denied) (citing *Ramirez v. State*, 318 S.W.3d 906, 908 (Tex. App.—Waco 2010, no pet.) (holding "[o]nly when [the withdrawal notification is] properly challenged and denied relief is there a trial court order that is final from which the inmate . . . can appeal")).  Here, because Lee failed to secure an order from the trial

---

[2]For example, in *Webb v. State*, 324 S.W.3d 229 (Tex. App.—Amarillo 2010, pets. denied) (per curiam), the Court of Appeals noted,

> This document is not an "order" in the traditional sense of a court order, judgment, or decree issued after notice and hearing in either a civil or criminal proceeding.  The controlling statute, TEX. GOV'T CODE ANN. § 501.014(e) ([West] Supp. 2009), describes the process as a "notification by a court" directing prison officials to withdraw sums from an inmate's trust account, in accordance with a schedule of priorities set by the statute, for the payment of "any amount the inmate is ordered to pay by order of the court."  This document is more akin to a judgment nisi.  A judgment nisi, commonly used in bond forfeiture proceedings, is a provisional judgment entered when an accused fails to appear for trial.  A judgment nisi triggers the issuance of a capias and it serves as notice of the institution of a bond forfeiture proceeding.  It is not final or absolute, but may become final.  Nisi means "unless," so a judgment nisi is valid unless a party takes action causing it to be withdrawn.  Similarly, a withdrawal notification issued pursuant to section 501.014(e), triggers a trust fund withdrawal, serves as notice of the collection proceeding, and continues to operate unless the inmate takes action causing the notification to be withdrawn.  Therefore, rather than refer to that document as an order, we prefer to use the term "withdrawal notification" to avoid confusion with an underlying court order or judgment ordering the payment of a sum falling within at least one of the six priority categories listed in the statute.

*Id.* at 230, n.1 (citations omitted).

9

court addressing his civil law issue, we would lack jurisdiction to hear Lee's argument, even had he raised the issue in a separate, civil appeal.[3]

Because we find no error related to the judgment of conviction entered in this matter, we affirm that judgment. Because we lack jurisdiction to hear Lee's point of error concerning the trial court's Order to Withdraw Funds, we dismiss Lee's second point of error for want of jurisdiction.

Ralph K. Burgess
Justice

Date Submitted:     January 7, 2015
Date Decided:     April 9, 2015

Do Not Publish

---

[3]We note that Lee's notice of appeal states that Lee "wishes to appeal from the conviction to the Sixth Court of Appeals on errors raised by written motion and ruled on before trial and on errors arising during and subsequent to trial." Rule 25.1 of the Texas Rules of Appellate Procedure addressing perfection of an appeal in civil cases, requires a notice of appeal to identify the date of the judgment or order appealed. TEX. R. APP. P. 25.1(d). Lee's notice of appeal was filed pursuant to Rule 25.2 of the Texas Rules of Appellate Procedure since it (1) clearly states that he is appealing his conviction, and (2) fails to state that he is appealing from any order or judgment related to his civil complaint. In the absence of a specific designation of the "judgment or order appealed from" as required by Rule 25.1(d)(2), we will not presume that a notice of appeal filed on direct appeal of a criminal case also invokes this Court's civil jurisdiction.